[No. B035685. Second Dist., Div. Five. July 10, 1990.]

CONRAD NEGRON et al., Plaintiffs and Appellants, v. VINCE DUNDEE, JR., et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Edward R. Brown for Plaintiffs and Appellants.

Larr & Poteet, William R. Larr and Anthony A. Sears for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—This is a dispute between the present owners of two adjoining commercial properties, concerning an easement for parking, ingress and egress. Appellants Conrad and Lucy Negron own the property described as parcel 4, located at 3030 Foothill Boulevard in La Crescenta. Respondents

Vince Dundee, Jr., and Rita Marie Dundee own the adjoining property to the west, known as parcel 3 at 3034 Foothill Boulevard. Appellants assert that respondents' parcel 3 is burdened with an easement 40 feet wide and approximately 241 feet deep for ingress and egress and parking by appellants, their tenants and customers. By nonjury trial on the parties' related complaint and cross-complaint, the trial court determined there is no easement and quieted title in respondents. Appellants appeal from the portion of the judgment which determines that appellants have no right, title or interest in an easement over the easterly 40 feet of respondents' parcel.

Both parties were originally lessees from a common owner, the Williamsons. The trial court found that the leases created the easement claimed by appellants, but that appellants' easement was abandoned as a matter of law in 1978 when the easement was not delineated on a parcel map filed under the Subdivision Map Act. (Gov. Code, § 66410 et seq.)[1] The court held that under the circumstances of this case the filing of the parcel map constituted a merger and resubdivision of subdivided lands under section 66499.20 1/2. According to the language of that section, all streets and easements not shown on the map are abandoned; therefore, the court found appellants' easement was extinguished. The court further indicated, however, that if section 66499.20 1/2 did not apply, the judgment should be in favor of appellants' having an easement over respondents' property.

■ We reverse on the ground that section 66499.20 1/2 does not apply to the filing of the parcel map in this case. Section 66499.20 1/2 is intended as a procedure for "undoing" a previously recorded subdivision map. Here the parcel map was the first recorded subdivision of the property, and the court erred in treating the filing of this map as a merger and resubdivision under section 66499.20 1/2. Having no application to the circumstances of this case, the language of section 66499.20 1/2 did not operate to extinguish appellants' easement.

FACTUAL BACKGROUND

The Williamsons originally owned the property on the south side of Foothill Boulevard between Ramsdell and Cloud which eventually became parcels 1, 2, 3, 4, and 5. In 1958, the Williamsons leased parcel 4 to appellants' predecessor, Palmer, who operated a miniature golf course on that parcel. The Palmer lease with option to purchase provided, "There shall be

---

[1] All section references hereafter are to the Government Code unless otherwise indicated.

available to Lessees for ingress and egress and for parking for Lessees and their patrons during the term of this lease a strip of land 40 ft. wide to the west of the said parcel and 225 ft. deep and an additional parking area to the rear of said parcel [which] shall extend to the west beyond the western boundary thereof a distance of 40 ft."

In 1963, the Williamsons leased parcel 3 to respondents. A contemporaneous amendment to the lease provided, "It is agreed by and between the parties that the existing driveway approximately 40 feet in width lying easterly and adjoining the demised premises may be used in common by Lessee herein and other tenants of Lessors, and it is further agreed that the parking area lying easterly of the aforesaid driveway shall be used in common with Lessee and customers of the tenants of Lessors using the adjoining miniature golf course property." Respondents operated a restaurant on their parcel until the restaurant burned down in 1980.

In 1974, Palmer assigned his lease to appellants. In 1975, appellants and the Williamsons executed a new lease with option to purchase. It provided, "There shall be available to the lessee for ingress and egress and for parking for lessee patrons during the term of the lease a strip of land 40ft [sic] wide, to the west of said parcel. [sic] and 241.62 [sic] deep." Appellants replaced the miniature golf course with a batting cage. Customers used the subject strip for a driveway and for parking. In 1981, appellants subleased to Morelli, who operated an equipment rental business. The subject strip was used by vehicles and customers of the equipment rental business.

The Subdivision Map Act problem arose in 1975 when the Williamsons gave Harold Present a lease with option to purchase parcel 1, which was west of respondents' parcel 3. Present testified at trial that when he attempted to exercise his option to purchase by having a lot split, he discovered that the various Williamson leases created five parcels and therefore it was necessary to subdivide in compliance with the Subdivision Map Act.

Present applied to file a parcel map and handled most of the paperwork on the subdivision. Because appellants had a recorded lease with option to purchase, appellants' consent to the filing of the map was required. (§ 66445, subd. (e).) Present told appellants that he needed their consent to the filing of the parcel map to enable him to purchase his property. Appellants were not told that consenting to the filing of the parcel map would have any effect on their right to use the easement.

In 1978 parcel map No. 6155 was filed. The parcel map specifically showed various utility and flood control easements but it did not delineate any 40-foot strip on respondents' parcel as an easement.

## DISCUSSION

## I

Section 66499.20 1/2 provides, "Subdivided lands may be merged and resubdivided without reverting to acreage by complying with all the applicable requirements for the subdivision of land as provided by this division and any local ordinances adopted pursuant thereto. The filing of the final map or parcel map shall constitute legal merging of the separate parcels into one parcel and the resubdivision of such parcel, and the real property shall thereafter be shown with the new lot or parcel boundaries on the assessment roll. Any unused fees or deposits previously made pursuant to this division pertaining to the property shall be credited pro rata towards any requirements for the same purposes which are applicable at the time of resubdivision. Any streets or easements to be left in effect after the resubdivision shall be adequately delineated on the map. After approval of the merger and resubdivision by the governing body or advisory agency the map shall be delivered to the county recorder. The filing of the map shall constitute legal merger and resubdivision of the land affected thereby, and shall also constitute abandonment of all streets and easements not shown on the map."

Arguing this section applies here, respondents contend that under its literal terms all easements not adequately delineated on the map are abandoned. Respondents contend that regardless of appellants' lack of knowledge or intent in signing the map, appellants' easement was extinguished as a matter of law. We find, however, that this section does not apply in the first place to the circumstances of this case.

The language of this section, its placement in the article dealing with reversions to acreage (§§ 66499.11 through 66499.20 3/4) and the general understanding of commentators show this section is intended for abandonment of a previously recorded subdivision map. It does not apply to this case, because parcel map No. 6155 was the original subdivision map recorded in compliance with the Subdivision Map Act.

Section 66499.20 1/2 states, "*Subdivided* lands may be *merged* and *re*subdivided without reverting to acreage" by complying with the require-

ments of that section. It is in the same article which begins with section 66499.11, which provides, "*Subdivided* real property may be reverted to acreage pursuant to the provisions of this article." Another section of that article, section 66499.20 1/4, also refers to reversion to acreage of "land *previously subdivided*." (Italics added.)

These provisions, and their strict language abolishing various streets, easements and dedications which are not expressly preserved on the new map, assume the existence of a previously recorded subdivision map in which such dedications were made. (§ 66475.) Thus, on a petition for reversion to acreage, the final map must delineate "dedications which will not be vacated" (§ 66499.13, subd. (c)); the legislative body must find that "[d]edications or offers of dedication to be vacated or abandoned by the reversion to acreage are unnecessary for present or prospective public purposes" (§ 66499.16, subd. (a)); and upon the filing of the final map for recording, "all dedications and offers of dedication not shown thereon shall be of no further force or effect" (§ 66499.18). Moreover, one of the conditions under which subdivided property may be reverted to acreage is that "[n]o lots shown on the final or parcel map have been sold within five years from the date such map was filed for record." (§ 66499.16, subd. (b)(3).)

Section 66499.20 1/2 performs a similar function but permits, in one step, both the abandonment of the old subdivision and creation of a new subdivision. California Subdivision Map Act Practice (Cont.Ed.Bar 1987) states that formal reversion proceedings "are typically initiated by local agencies *to eliminate a previously approved subdivision map* when the improvements required as map conditions have not been constructed within the applicable time limits or when no lots in the subdivision have been sold . . . . Subdividers' attorneys more commonly use the simpler merger and resubdivision procedures . . . because the subdivider usually wants *to substitute a new subdivision map for the old one* rather than to abandon the subdivision altogether." (*Id.* § 9.1, pp. 209-210, italics added.) Also, "subdividers commonly file a *new subdivision map on the property covered by the old map*, thereby merging the parcels and resubdividing without the necessity of reverting the property to acreage. See Govt C § 66499.20 1/2." (*Id.* at § 7.20, p. 180, italics added.) Similarly, 7 Miller and Starr, Current Law of California Real Estate (2d ed. 1990) § 20.133 states at page 381 that a petition for reversion is "for the purpose of *abandoning a recorded final or parcel map* and reverting the property to unsubdivided acreage" and, at page 382, "[s]ubdivided lands can be merged and resubdivided by the filing of a *new* final subdivision map." (Italics added.)

Respondents contend that a division of land by leases constitutes a subdivision. (§ 66424; 57 Ops.Cal.Atty.Gen. 556 (1974).) They contend that if

the Williamsons previously leased five parcels without compliance with the act, then parcel map No. 6155 should be treated *as if* it were a merger and resubdivision under section 66499.20 1/2. We disagree with this reasoning because it distorts section 66499.20 1/2 from the purpose it was designed to serve, the "undoing" of a previously recorded subdivision map. Contrary to the suggestion below, refusing to apply section 66499.20 1/2 to this case does not reward the Williamsons for a prior failure to comply with the act. The Williamsons were penalized because they were unable to sell parcel 1 to Harold Present until the problem was solved and a proper subdivision map filed. (See § 66499.30.)

In summary, section 66499.20 1/2 does not apply in this case because there was no previously recorded subdivision map. The literal language of that section, which was the basis for the judgment in this case, does not apply and does not extinguish appellants' easement.

Respondents do not contend that any other provision of the Subdivision Map Act extinguished appellants' easement in this manner. Although appellants signed and acknowledged a certificate consenting to the preparation and recording of the parcel map, as required by section 66445, subdivision (e), nothing in the language of the certificate they signed gave up their right to use the 40-foot strip on respondents' property.[2]

## II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

.

---

[2] The certificate signed by appellants stated, "We hereby certify that we are the owners of or are interested in the lands included within the subdivision shown on this map within the distinctive border lines, and we consent to the preparation and filing of said map and subdivision. [¶] We hereby dedicate to the public use all streets, highways, and other public ways shown on said map. As a dedication to the public use, while all of Foothill Boulevard within or adjacent to this subdivision remains a public street, we hereby grant to the County of Los Angeles the right to restrict direct vehicular ingress and egress to the said street if any portion of said street within or adjacent to this subdivision is vacated, such vacation terminates the above dedication as to the part vacated. [¶] We further certify that, except as shown on a copy of this map on file in the office of the County Road Commissioner, we know of no easement or structure existing within the easements offered for dedication to the public, other than publicly owned water lines, sewers or storm drains, that we will grant no right or interest within the boundaries of said easements offered to the public, except where such right or interest is expressly made subject to the said easements. [¶] Lessees and optionees under leases recorded in book Mll, page 624, O.R. and in book M4898, page 701, O.R. [signed] Conrad Negron, Lucy Negron"

* See footnote, *ante,* page 1502.

### III

The judgment is reversed with directions to the trial court to modify the judgment to provide an easement to appellants. Costs on appeal are awarded to appellants.

Lucas, P. J., and Turner, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 19, 1990.