[No. A068276. First Dist., Div. One. Aug. 14, 1995.]

STEVE GOMES, Plaintiff and Appellant, v.
COUNTY OF MENDOCINO et al., Defendants and Respondents.

COUNSEL

Rawles, Hinkle, Carter, Behnke & Oglesby, Jared G. Carter and Frank Shaw Bacik for Plaintiff and Appellant.

H. Peter Klein, County Counsel, and Frank Zotter, Jr., Deputy County Counsel, for Defendants and Respondents.

OPINION

STRANKMAN, P. J.—The facts in this case are uncomplicated and undisputed, but the same cannot be said about the pertinent law. At issue is the applicability of Government Code section 66499.20½, a seldom cited section of the Subdivision Map Act (Gov. Code, § 66410 et seq.) (the Act).[1] The section provides in part, "Subdivided lands may be merged and resubdivided without reverting to acreage by complying with all the applicable

---

[1] All subsequent statutory references are to the Government Code unless otherwise indicated. Section 66499.20½ originally was enacted in 1977 as section 66499.20¾ and was renumbered as section 66499.20½ and amended in 1982. (Stats. 1977, ch. 234, § 12, p. 1038; Stats. 1982, ch. 87, § 26, p. 269.)

requirements for the subdivision of land as provided by [the Act] and any local ordinances adopted pursuant thereto." We agree with the trial court and hold that a 1976 subdivision of property in Mendocino County (the County) into four parcels was a resubdivision of subdivided lands within the meaning of section 66499.20½. Therefore appellant, the present owner of one of those parcels, was not entitled to five certificates of compliance based on five old patents underlying his parcel.

## FACTUAL AND PROCEDURAL BACKGROUND

Before 1975, Clayton Orr acquired approximately 3,725 acres near Cave Creek in the County. Many years earlier that property had been conveyed from government ownership to various individuals at different times by patents, creating separate parcels. In 1975, Orr applied for a minor subdivision, seeking to divide his acreage into 4 parcels of 440, 480, 640, and 2,165 acres. The minor subdivision (MS 210-75) was approved by the County in 1976 and was accomplished by the recording of a "Unilateral Agreement," describing the parcels and attesting that all conditions had been met. This procedure for the creation of a subdivision of four or fewer parcels was authorized by County ordinance.

Sometime later, appellant Steve Gomes acquired the 480-acre parcel. Underlying that parcel were five government patents, described in government surveys during the nineteenth century. In 1994, appellant applied to the County for certificates of compliance pursuant to section 66499.35, requesting recognition of the 5 patented parcels ranging from 38 to 166 acres. After his application was denied by the County's planning commission, he appealed to the board of supervisors; that appeal was denied.

Appellant petitioned for writ of mandate. After a hearing, the trial court denied the petition. The court agreed with the County that section 66499.20½ was controlling and that the underlying patents had been eliminated by the 1976 subdivision. In this appeal, appellant contends that section 66499.20½ does not apply and that other provisions of the Act entitle him to the five certificates.[2]

## DISCUSSION

### A. The "Subdivided Lands" Requirement of Section 66499.20½

Article 1 of chapter 6 of the Act provides a procedure for the reversion of previously subdivided property to unsubdivided acreage, initiated either by

---

[2]Appellant filed a premature notice of appeal from the court's memorandum of decision. We will treat that notice as filed immediately after entry of the judgment denying the petition. (See Cal. Rules of Court, rule 2(c).)

the legislative body of the local agency or by petition of the owners of the property within the subdivision. (§§ 66499.11–66499.20¼.) According to one commentator, these formal reversion proceedings typically are initiated by local agencies to eliminate a previously approved subdivision map when the improvements required as map conditions have not been constructed within applicable time limits or when no subdivision lots have been sold. (Curtin et al., Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) § 9.1, p. 209.)

Also appearing in the same article is section 66499.20½, the statute at issue in this case. The statute states in pertinent part: "Subdivided lands may be merged and resubdivided without reverting to acreage by complying with all the applicable requirements for the subdivision of land as provided by this division and any local ordinances adopted pursuant thereto. The filing of the final map or parcel map shall constitute legal merging of the separate parcels into one parcel and the resubdivision of such parcel, and the real property shall thereafter be shown with the new lot or parcel boundaries on the assessment roll. . . ."[3] Curtin suggests that this merger and resubdivision procedure is more commonly used than the formal reversion to acreage process because it enables an owner to resubdivide property for development in one relatively simple step. (Curtin et al., Cal. Subdivision Map Act Practice, *supra*, § 9.4, p. 212.)

■ We first consider appellant's contention that section 66499.20½ is inapplicable because patented parcels are not "[s]ubdivided lands," the first statutory prerequisite.

The Act does not define that term, but does define a "subdivision" as "the division . . . of any unit or units of . . . land, . . . shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease, or financing, . . ." (§ 66424.) In *John Taft Corp.* v. *Advisory Agency* (1984) 161 Cal.App.3d 749 [207 Cal.Rptr. 840], the court held that identification of lots on an 1878 United States Government Survey

---

[3]Section 66499.20½ further provides: "Any unused fees or deposits previously made pursuant to this division pertaining to the property shall be credited pro rata towards any requirements for the same purposes which are applicable at the time of resubdivision. Any public streets or public easements to be left in effect after the resubdivision shall be adequately delineated on the map. After approval of the merger and resubdivision by the governing body or the advisory agency the map shall be delivered to the county recorder. The filing of the map shall constitute legal merger and resubdivision of the land affected thereby, and shall also constitute abandonment of all public streets and public easements not shown on the map, provided that a written notation of each abandonment is listed by reference to the recording data creating these public streets or public easements, and certified to on the map by the clerk of the legislative body or the designee of the legislative body approving the map."

Map did not establish a subdivision of land or create separate lots within the meaning of the Act. (*Id.* at pp. 753-757.) At issue in this case, however, are parcels created by federal patents, not lots simply designated on a federal survey map. A patent is a deed of the United States, the conveyance by which it passes its title to portions of the public domain. (*Smelting Co.* v. *Kemp* (1882) 104 U.S. (14 Otto) 636, 640 [26 L.Ed. 875, 876]; *Beard* v. *Federy* (1866) 70 U.S. (3 Wall.) 478, 491 [18 L.Ed. 88, 92].)

Recently, the court in *Lakeview Meadows Ranch* v. *County of Santa Clara* (1994) 27 Cal.App.4th 593 [32 Cal.Rptr.2d 615] distinguished *John Taft Corp.* v. *Advisory Agency, supra,* 161 Cal.App.3d 749, and held that when a parcel was separated from other contiguous units of land by a federal patent in 1891 conveying title to that parcel, the conveyance was a subdivision of land. (27 Cal.4th at pp. 596-598.) Plaintiff in *Lakeview* acquired title in 1965 to thousands of acres of ranch land and sought certificates of compliance for a number of parcels within that acreage. The County denied certificates for three of the parcels, reasoning they did not meet the requirements of the Act. Disagreeing, the appellate court explained that by its own terms, the requirements of the Act do not apply to subdivisions or parcels created before 1893 when there were no laws regulating subdivisions. The County conceded that two of the parcels had been created by deed before that date. The third parcel had been conveyed by a federal patent in 1891. Based on the Act's definition of "subdivision," the court concluded that the federal patent conveying the parcel was a subdivision of land that lawfully created the parcel as a separate lot.[4] (*Lakeview, supra,* at pp. 596-598.)

Precisely when each of the underlying five patents in this case was issued is not clear from the record, the trial court's findings, or the parties' briefs, but that uncertainty is not significant for purposes of our analysis. Appellant's petition for writ of mandate alleged that the parcels were lawfully created by the patents, and the County's answer to the petition admitted that allegation. Accordingly, *Lakeview* is fatal to appellant's argument that the patented lands were not subdivided lands within the meaning of the Act.

Notwithstanding *Lakeview,* appellant argues that land conveyed by patent is not subdivided land because neither the state nor the federal government is a "subdivider" within the meaning of the Act. Section 66423 defines subdivider as "a person, firm, corporation, partnership or association who proposes to divide, divides or causes to be divided real property into a subdivision for himself or for others . . . ." Appellant's argument overlooks the

[4]The court then held that because the parcels were created before the enactment of any land-division regulations, their common ownership did not result in merger. Plaintiff was entitled to the certificates of compliance. (*Lakeview Meadows Ranch* v. *County of Santa Clara, supra,* 27 Cal.App.4th at pp. 599-600.)

rule that governmental bodies or agencies are generally held subject to legislation that applies to any "person," as long as the legislation does not impair the government's sovereign powers. (*People* v. *Crow* (1993) 6 Cal.4th 952, 958-959 & fn. 6 [26 Cal.Rptr.2d 1, 864 P.2d 80]; *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250].) Based on that principle, the Attorney General has issued opinions indicating that governmental entities are subject to the Act under some circumstances. (62 Ops.Cal.Atty.Gen. 136 (1979) [district agricultural association plans to subdivide property into 20 parcels for sale]; 62 Ops.Cal.Atty.Gen. 140 (1979) [Caltrans seeks to dispose of 75 contiguous parcels].)

Furthermore, appellant's argument also overlooks sections of the Act implying that a governmental entity may be a subdivider. For instance, section 66428, subdivision (a)(2) provides in pertinent part that a parcel map shall not be required for: "Land conveyed . . . from a governmental agency [or] public entity . . . unless a showing is made in individual cases, upon substantial evidence, that public policy necessitates a parcel map." If a conveyance from a public entity never could constitute a subdivision, that provision would be unnecessary.

B. *Negron v. Dundee (1990) 221 Cal.App.3d 1502*

Relying on *Negron* v. *Dundee* (1990) 221 Cal.App.3d 1502 [271 Cal.Rptr. 381], the sole published case directly considering section 66499.20½, appellant contends that the statute is not controlling because it applies only to the abandonment of a previously recorded subdivision map.

*Negron* deals with a dispute over an easement. An owner divided property into five parcels and leased them to different individuals for commercial purposes, all without complying with the Act. The lease for one parcel included a parking and access easement over the adjoining lot. Eventually, when a lessee and prospective purchaser of one parcel was attempting to accomplish a lot split, he learned he would have to subdivide in accordance with the Act. He filed a parcel map which did not delineate the easement. Although the lessees of the parcel benefited by the easement consented to filing of the map, they were not aware their consent would affect the easement. Nevertheless, the trial court held that the filing of the parcel map constituted a merger and resubdivision under section 66499.20½, extinguishing the easement. (*Negron* v. *Dundee, supra,* 221 Cal.App.3d at pp. 1504-1505.)

The appellate court held that section 66499.20½ did not apply and reversed. The court said, "The language of this section, its placement in the

article dealing with reversions to acreage . . . and the general understanding of commentators show this section is intended for abandonment of a previously recorded subdivision map. It does not apply to this case because [the parcel map] was the original subdivision map recorded in compliance with the [Act]." The court also said that the statute "does not apply in this case because there was no previously recorded subdivision map." (*Negron* v. *Dundee, supra,* 221 Cal.App.3d at pp. 1506, 1508.)

■ Although the *Negron* court's comments certainly lend support to appellant's interpretation of the statute, language in an opinion must be understood in the light of the facts and the issues before the court, and an opinion is not authority for a proposition not considered. (*People* v. *Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769]; *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753-755 and cases there cited.)

■ In *Negron,* the original subdivision by lease of the disputed property was unlawful because the lessor had not complied with the Act. By holding that section 66499.20½ did not apply to the subsequent, lawful subdivision, the *Negron* court simply read into the statute a requirement that its merger and resubdivision provisions apply only to property that previously has been subdivided lawfully. So understood, *Negron* is consistent with our conclusion that the statute does apply in this case, in which the creation of parcels by patent did not require the filing of a subdivision map, but was nonetheless lawful. The *Negron* court was not confronted by or concerned with a factual context similar to that in this case, and its statement that section 66499.20½ is intended only for abandonment of a previously recorded subdivision map goes too far.

Public policy considerations expressed through the Act support our conclusion. ■ Among the Act's purposes are to encourage and facilitate orderly community development, coordinate planning with the community pattern established by local authorities, and assure proper improvements are made, so that the area does not become an undue burden on the taxpayer. (*San Dieguito Partnership* v. *City of San Diego* (1992) 7 Cal.App.4th 748, 759, fn. 12 [9 Cal.Rptr.2d 440]; *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453, 458 [202 Cal.Rptr. 606].) Those purposes would be undermined or thwarted if a landowner who subdivided in compliance with the Act could then claim entitlement to multiple certificates of compliance based on old underlying patents despite the subdivision.

## C. *Subdivision by Unilateral Agreement*

Section 66499.20½ provides in pertinent part that the filing of the final map or parcel map "shall constitute legal merging of the separate parcels into one parcel and the resubdivision of such parcel . . . ." ▮ Appellant contends that even if patented parcels qualify as subdivided lands within the meaning of the statute, it still does not apply because the 1976 subdivision was created by a unilateral agreement, not by the filing of a parcel map or final map.

To resolve this issue, we turn to settled principles of statutory construction. The objective of statutory interpretation, of course, is to ascertain and effectuate legislative intent. If the words are clear, a court may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) At the same time, however, a statute is not to be read in isolation; it must be construed with related statutes and considered in the context of the statutory framework as a whole. (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) A court must determine whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other related provisions. Literal construction of statutory language will not prevail if contrary to the legislative intent apparent in the statutory scheme. (*People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Statutory language should not be given a literal meaning that results in absurd and unintended consequences. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134]; *People* v. *Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].)

The Act provides that subject to certain exceptions not relevant here, tentative and final maps are required for all subdivisions creating five or more parcels; parcel maps are required for subdivisions consisting of four or fewer parcels. (§§ 66426, 66428, subd. (a).) But the Act also mandates local agencies to provide by ordinance a procedure for waiving the parcel map requirement. The ordinance must require a finding by the legislative body or advisory agency that the proposed division complies with the Act or local ordinance as to area, improvement and design, floodwater drainage control, appropriate public roads, sanitary disposal facilities, water supply availability, and other matters; it may require a tentative map. (§ 66428, subd. (b).)

The County has adopted the waiver ordinance required by section 66428. Instead of a map, a unilateral agreement is recorded setting forth, among other matters, a statement signed by the owner and subdivider under penalty

of perjury attesting that all the conditions of approval have been met. When the unilateral agreement is endorsed by the director of planning and is recorded, the minor subdivision is deemed effective and the parcels created thereby may be conveyed or otherwise transferred. (Mendocino County Code, § 17-49.)

Although section 66499.20½ does state that resubdivision is accomplished by the filing of a final or parcel map, it also states that subdivided lands may be resubdivided by "complying with all the applicable requirements for the subdivision of land as provided by [the Act] and any local ordinances adopted thereto." It is undisputed that Orr's 1976 subdivision was accomplished in compliance with those state and local requirements, with the unilateral agreement substituting for a parcel map. We agree with the trial court that when sections 66499.20½ and 66428 are read together, the only reasonable conclusion is that the filing of either a final map, a parcel map, or the equivalent document required by local ordinance when a parcel map is waived, accomplishes the merging of separate parcels and resubdivision within the meaning of section 66499.20½.

Appellant cites no authority supporting the notion that when a parcel map is waived pursuant to local ordinance, what results is a substandard subspecies of subdivision excluded from the scope of section 66499.20½. To adopt appellant's reading of the statute would place a local agency in a "Catch 22" quandary. Although required by the Act to provide a procedure for waiver of the parcel map for a subdivision of four or fewer parcels, a local agency also would be forced to disregard the effect of a subdivision created by that procedure and issue certificates of compliance for underlying old patents simply because no parcel map was filed. Surely the Legislature did not intend that absurd result.

D. *The Act's Provisions on Local Agency Initiated Merger*

Appellant accurately states that the County has never filed a notice of merger for the five patented parcels. (See § 66451.19, subd. (a).) Therefore, he reasons, they must be considered not to have merged (see § 66451.30), and he is entitled to five certificates of compliance.

Some background on the evolution of the concept of the involuntary merger of contiguous parcels in common ownership is essential to an understanding of the argument. The legislative history of the state's merger provisions, which one treatise writer has characterized as "tortuous" (7 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1990) § 20:80, p. 194), was summarized recently by the Supreme Court in *Morehart* v. *County*

*of Santa Barbara* (1994) 7 Cal.4th 725, 751-757 [29 Cal.Rptr.2d 804, 872 P.2d 143] (*Morehart*).[5] *Morehart* explains that the concept originated with a 1973 opinion of the California Attorney General (56 Ops.Cal.Atty.Gen. 509 (1973)) suggesting that all contiguous units of land in common ownership were to be regarded as automatically merged under the Act. (*Morehart, supra*, at pp. 753-754.) "Against this background, the Legislature enacted the various versions of former section 66424.2 . . . and then . . . the present parcel merger sections (§ 66451.10 et seq.) and their amendments. All of that legislation begins with a general negation of automatic parcel merger by virtue of common ownership, followed by a delineation of particular circumstances and conditions under which merger *will* take place." (*Morehart, supra*, at pp. 754-755; see, e.g., Stats. 1976, ch. 928, § 4, p. 2120; Stats. 1977, ch. 234, § 5, p. 1034; Stats. 1980, ch. 403, § 2, pp. 788-789; Stats. 1980, ch. 1217, §§ 2-3, pp. 4127-4128.)

In 1983 the Legislature replaced former section 66424.2 with new merger provisions. As enacted and later amended, these provisions (§ 66451.10 et seq.) prescribe when local ordinances may make parcels eligible or ineligible for involuntary merger and dictate procedural safeguards which local agencies must follow to initiate a merger. (See *Morehart, supra*, 7 Cal.4th at pp. 755-760; see, e.g., § 66451.10, subd. (a) [contiguous parcels not automatically merged by virtue of common ownership]; § 66451.10, subd. (b) [parcels may be merged by local agencies only in accordance with the Act]; § 66451.19 [January 1, 1986, deadline for local agency to record notice of merger for any parcels merged by prior law before January 1, 1984].)

Although these merger provisions apply to parcels created before the effective date of any applicable state law regulating the subdivision of land (*Morehart, supra*, 7 Cal.4th at p. 762), it does not follow they should have been applied instead of section 66499.20½ in this case. ■ It is elementary that a specific statute relating to a particular subject will govern as to that subject as against a more general statute, even though the latter, standing alone, is comprehensive enough to include the subject to which the more specific provision relates. The specific provision is treated as an exception to the general. (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 325 [279 Cal.Rptr. 613, 807 P.2d 455].) ■ It is true the County never initiated a merger of the property

---

[5]For additional discussion of the legislative history of the state's merger provisions, see 7 Miller and Starr, Current Law of California Real Estate, *supra*, § 20:80, pages 194-198; Curtin et al., California Subdivision Map Act Practice, *supra*, §§ 2.17-2.21, pages 33-41; State of California, Office of Planning and Research, Merger and Local Governments: An Advisory Paper (1986) pages 3, 7-8.

in question, but that fact is not a significant part of the story underlying this case. The pivotal question is the effect of the 1976 subdivision on the land previously subdivided by patent, and the specific statute relating to that topic is section 66499.20½, not the general involuntary merger provisions discussed above.

*Stell* v. *Jay Hales Development Co.* (1992) 11 Cal.App.4th 1214 [15 Cal.Rptr.2d 220] is of no help to appellant on this point. In *Stell*, several property owners filed a nuisance complaint seeking to enjoin construction of a house on the rear parcel of a neighboring lot. They argued in part that the rear parcel had been created by an illegal subdivision and that later the front and rear parcels had merged by operation of law when acquired by one owner. However, the city had issued a certificate of compliance in 1989, thereby certifying that the division of the lot was lawful and that it did not see fit to effectuate a merger. While the reviewing court discussed the subdivision and merger issues, it ultimately concluded that issuance of the certificate "deflect[ed]" any claim of merger. The statute of limitations barred direct review of issuance of the certificate and the property owners were not entitled to a collateral attack under the guise of a nuisance action. (*Id.* at pp. 1223-1229.) The case is inapposite.[6]

Finally, we acknowledge appellant's fleeting mention of Civil Code section 1093, which provides in effect that a merger of separate parcels does not occur by reason of their conveyance in a single instrument. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 136, pp. 351-352.) But appellant does not explain why this statute has any bearing here, and we will not construct an argument on his behalf.

DISPOSITION

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

---

[6]Appellant argues in passing that he should be entitled to certificates of compliance because the County has issued certificates for other similarly situated lots. However, the issuance of those certificates has no bearing on the legal issue in this appeal.