[No. D049788. Fourth Dist., Div. One. Apr. 30, 2008.]

LUCE, FORWARD, HAMILTON & SCRIPPS, LLP, Plaintiff and Respondent, v.
PAUL KOCH et al., Defendants and Appellants.

## COUNSEL

Roland E. Bye for Defendants and Appellants.

Luce, Forward, Hamilton & Scripps, Charles A. Bird and Aaron T. Winn for Plaintiff and Respondent.

## OPINION

**McCONNELL, P. J.**—A proposed neutral arbitrator is required to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that [he or she] would be able to be impartial." (Code Civ. Proc., § 1281.9, subd. (a).)[1] Based on a disclosure statement, a party may automatically disqualify an arbitrator by serving a timely written notice of disqualification. (§ 1281.91, subd. (b)(1).) The trial court must vacate an arbitration award if it finds the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (§ 1286.2, subd. (a)(6).)

■ The issue in this case is one of first impression: Must an arbitration award be vacated on the ground the arbitrator refused to disqualify himself after receiving a timely notice of disqualification, when the notice was based on the disclosure of information the arbitrator was not *required* to disclose but nonetheless revealed out of an abundance of caution? We answer the

---

[1] Further references are also to the Code of Civil Procedure.

question in the negative, and affirm the judgment confirming an arbitration award in favor of plaintiff Luce, Forward, Hamilton & Scripps, LLP (Luce Forward).

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2003 defendants, Paul Koch, Victoria Koch, Patricia Manolis and Acquvest, Inc. (Acquvest), retained Luce Forward to represent them in complex securities litigation involving millions of dollars. Other than their initial retainer, defendants paid Luce Forward no fees, and in October 2004 it sued them for breach of contract and related counts. Luce Forward successfully petitioned to compel arbitration under the fee agreement, and the parties agreed to the appointment of retired Superior Court Judge J. Richard Haden, who was with Judicial Arbitration and Mediation Services (JAMS), as the arbitrator.

Two attorneys with Luce Forward, Pamela Wagner and Todd Kinnear, were listed on the complaint and other pleadings as the attorneys for the firm. Judge Haden sent the parties a written disclosure that he had served as a mediator in three cases in which Luce Forward was a party, "other members of the Luce [Forward] firm participated as counsel," and none of those mediations "concerned the issues in this case." The disclosure also stated the "arbitrator does not believe this prior work as a mediator would impact his ability to be fair to both sides in this arbitration." No party challenged the disclosure.

Arbitration was scheduled to begin January 25, 2006. On January 21, when he was preparing for the matter, Judge Haden discovered that Robert Steiner, a senior partner with Luce Forward, was listed in the caption of the firm's brief above Kinnear's name. He also discovered that Luce Forward listed Maureen Hallahan as an expert witness.

The arbitration was held on January 25, 26 and April 11 and 12, and Steiner appeared for Luce Forward. Roland Bye was the attorney of record for defendants, but he did not appear and had notified Judge Haden they planned to retain Thomas Malcolm of the Jones Day firm. Malcolm, however, was unable to appear because of a family emergency. Paul Koch (Koch) appeared without an attorney and was allowed to represent himself and his wife Victoria Koch. Manolis was allowed to appear through her son. Because an attorney must represent a corporation in court proceedings, Judge Haden advised Koch it would "be much better if Mr. Bye or counsel of your choice were here" to represent Acquvest.

Judge Haden then questioned Steiner on whether he planned to call Hallahan. Steiner responded: "I don't think she is necessary. She is a rebuttal

witness only and she testifies as to . . . reasonableness and necessity. Her opinion is in the file. But in the event that the Court wants to hear evidence on reasonableness and necessity, her written opinion says that she has reviewed the files and has formed that opinion."

Judge Haden explained, "I did not know the witness list until I reviewed the materials over the weekend, and I need to let you know that Ms. Hallahan is a lawyer of long standing in San Diego with whom I have served on the board of what is called the 'Business Trial Lawyers Association,' as I have served with Mr. Steiner. I wasn't aware Mr. Steiner was going to be the trial counsel. I thought Mr. Kinnear was. But this is a board that a great many lawyers and judges have served on through the years." Judge Haden explained there were between 500 and 700 members of the Association of Business Trial Lawyers and "at any given time, three dozen members of the board."

Judge Haden clarified that he served on the board with Steiner as well as Hallahan. He also stated he served with Steiner "through the years" on the board of the American Inns of Court. He stated "[t]his would in no way affect my ability to be fair and impartial to all sides in this case, but I like you to hear that from me rather than hear that from somebody else and have you wonder why I didn't tell you." Judge Haden added: "That is why I like to make that disclosure. Had I known this earlier, Ms. Hallahan was on the witness list or Mr. Steiner was going to be trial counsel, I would have told Mr. Bye earlier. . . . So I wanted to make that disclosure for the record."

Koch responded, "Your Honor—and I am sure that you can be nonpartial, but it's still a little bit of a shock to me that the two of you had participated on a board together. They bring in their top gun, probably one of the best trial attorneys at the Luce, Forward firm." Koch then requested that Judge Haden disqualify himself because of his disclosures pertaining to Steiner and Hallahan. Steiner offered to withdraw Hallahan from Luce Forward's witness list, and he argued disqualification was not required. Judge Haden stated, "[w]e are not talking about a social relationship. I have never been in his home, nor he in mine. We have participated in professional boards together. . . . We are not talking about close personal friendships or any kind of business relationships. We are talking about the fact that I have been actively involved in the legal community for over 30 years, Mr. Steiner over 40. Any time you're talking with lawyers or judges who have been around that long, they know each other. In an abundance of caution, as I told you this morning, I like people to hear that from me and not from others." Judge Haden also said he had not read Hallahan's report, would not do so, and would strike her name from the witness list.

Steiner added as follows: "I make representations to the Court and to opponents that Judge Haden and I have never exchanged personal favors, to my knowledge, never had lunch together, never have given each other any kind of consideration. I have appeared in his court on several occasions. That is all public record available to the county clerk. I have argued matters and I have won some and lost some in front of him. But there is nothing in a professional relationship of lawyer and judge and the boards upon which I have served or do serve that in any way raises any issue of impropriety."

Judge Haden denied Koch's challenge. Koch then moved to disqualify him for cause under JAMS's rules. Judge Haden called a recess so Koch could put his request in writing. Judge Haden denied the challenge and provided no additional written disclosure regarding Steiner or Hallahan despite Koch's requests. Koch argued the disclosures "created a reasonable belief that [y]our [h]onor cannot be neutral. Your [h]onor has a duty to update his disclosures." Koch asked that JAMS decide the disqualification issue rather than Judge Haden. Judge Haden contacted JAMS counsel who concurred in his decision.

At Judge Haden's urging, Koch telephoned Bye, and he agreed to represent Acquvest. The court allowed him to appear by telephone the first day of the hearing, and on following days he was to appear in person. Malcolm appeared for Koch and his wife on the final two days of the proceeding, and during closing argument he stated: " 'I would like to thank the Court. As is typical of my experience with you, Judge Haden, you're extremely courteous, and it is really a pleasant job to present a case in your court here, an arbitration or whatever, and there is certainly no way my clients will ever challenge or question your impartiality.' "

In June 2006 Judge Haden issued his final arbitration award. He found defendants breached their contract with Luce Forward and awarded the firm $301,508.09 in fees, the full amount it sought. '

Luce Forward petitioned to confirm the arbitration award, and defendants, all of whom Bye represented, petitioned to vacate the award on the ground Judge Haden was disqualified from hearing the matter because of his disclosures pertaining to Steiner and Hallahan. The court confirmed the award, determining that because Judge Haden was not *required* to disclose he served on professional boards with Steiner, there was no basis for his disqualification on the ground he nonetheless revealed that information. On October 16, 2006, judgment was entered against defendants on a joint and several basis.

## DISCUSSION

### I

### *Disclosure/Disqualification*

■ California favors arbitration as a speedy means of settling disputes, and to facilitate the policy it is essential that arbitration judgments are binding and final. (*A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1474–1475 [83 Cal.Rptr.2d 449].) Accordingly, arbitration judgments are subject to extremely narrow judicial review and the exclusive grounds for vacating an arbitration award are the statutory grounds set forth in section 1286.2 (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243–244 [28 Cal.Rptr.2d 402], citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899]), such as the "award was procured by corruption, fraud or other undue means," or the arbitrator exceeded his or her powers (§ 1286.2, subd. (a)(1), (4)). "Unless one of the enumerated grounds exists, a court may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice." (*Marsch v. Williams, supra*, at pp. 243–244.)

■ "Precisely because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process." (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1165 [18 Cal.Rptr.3d 142] (*Azteca*).) In 1994 the Legislature added section 1281.9 to the California Arbitration Act, which, as amended in 2001 (Stats. 2001, ch. 362, §§ 4–8), requires a proposed neutral arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . ." (§ 1281.9, subd. (a)).[2] The required disclosures specifically include "(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. . . . [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] . . . [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer for a party." (§ 1281.9, subd. (a).)

Under section 170.1, subdivision (a): "A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6)(A) For any reason: [¶]

---

[2] According to *Azteca, supra*, 121 Cal.App.4th at page 1165, the "2001 legislation arose out of a perceived lack of rigorous ethical standards in the private arbitration industry. Cosponsored by the Governor and the Judicial Council, the bill sought to provide 'basic measures of consumer protection with respect to private arbitration, such as minimum ethical standards and remedies for the arbitrator's failure to comply with existing disclosure requirements.' "

(i) The judge believes his or her recusal would further the interests of justice. [¶] (ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial. [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

■ Further, standard 7(d)(3) of the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Standards) requires, in relevant part, the disclosure of a "significant personal relationship with any party or lawyer for a party." (Std. 7(d)(3).) A "significant personal relationship" includes "a close personal friendship." (Std. 2(s).) Standard 7 also requires the disclosure of "[a]ny other professional relationship not already disclosed under paragraphs (2)–(7)." (Std. 7(d)(8).) Neither the code nor Standard 7 defines "professional relationship." (See *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 958 [51 Cal.Rptr.3d 903].)

■ A proposed arbitrator must make required disclosures within 10 days of the date of service of notice of the proposed nomination or appointment. (§ 1281.9, subd. (b).) Further, an arbitrator's duty of disclosure "is a continuing duty, applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding." (Std. 7(f).)

■ Section 1281.91, subdivision (a) provides that a proposed neutral arbitrator shall be disqualified if he or she fails to comply with section 1281.9. Subdivision (b)(1) of section 1281.91 provides: "If the proposed neutral arbitrator complies with Section 1281.9, the proposed neutral arbitrator shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after service of the disclosure statement."

■ Section 1281.91 "confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. [Citation.] There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. [Citation.] As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute." (*Azteca, supra*, 121 Cal.App.4th at p. 1163, fn. omitted.)

■ Section 1286.2, subdivision (a)(6) requires that an arbitration award be vacated if the arbitrator either: "(A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to

disqualify himself or herself as required by that provision." "On its face, the statute leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award." (*Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 845 [35 Cal.Rptr.3d 117].)

## II

### *Analysis*

### A

Defendants contend the court erred by denying their petition to vacate the arbitration award because Judge Haden was required to disqualify himself pursuant to Koch's written notice. Luce Forward agrees that if Judge Haden was legally required to make the disclosures he made pertaining to Steiner and Hallahan, Judge Haden was subject to disqualification.

Luce Forward contends, however, that serving on the board of directors of a professional organization with a party, party's attorney, or expert witness is not the type of relationship an arbitrator must disclose, and since Judge Haden was not required to make any disclosure pertaining to Steiner or Hallahan, the award is not subject to vacatur. Luce Forward asserts that only disclosures required by law may support a petition to vacate an award. Defendants respond that Judge Haden was required to disclose his board memberships, and even if he had no such duty, his voluntary disclosures were sufficient to trigger a party's right of disqualification.

We independently review the question of whether there is a statutory ground for vacation of the arbitration award. (*California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 945 [75 Cal.Rptr.2d 1].) However, the " 'issue whether the arbitrator[] had a duty to disclose information . . . which might indicate bias, is a question of fact. Our review as to that issue is deferential.' " (*Guseinov v. Burns, supra*, 145 Cal.App.4th 944, 957.)

### B

#### *Was Disclosure Required?*

Defendants characterize Judge Haden's relationships with Steiner and Hallahan as "close relationships," "complex relationships," "close professional relationships," and "too close for comfort." They rely on *Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839 [86 Cal.Rptr. 133] (*Johnston*), for

the proposition that an arbitrator must disclose even an "acquaintanceship" with a party's attorney or expert witness.[3]

*Johnston* involved an arbitration under an insurance policy. The insurer and the insureds each named one appraiser (the insureds named Burgard), and the two appraisers selected an attorney (Walsh) as the " 'competent and disinterested umpire.' " (*Johnston, supra,* 6 Cal.App.3d at p. 841.) Walsh made an award to one of the insureds, and only Burgard concurred. The insurer successfully petitioned for vacatur of the award on the ground that Walsh "failed to disclose his acquaintanceship with the claimants' counsel and [Burgard] and of the business dealings past and projected with [Burgard]." (*Id.* at p. 842.) Burgard's declaration in support of a petition to confirm the award stated he met Walsh " 'in 1962 during litigation in a civil action in which [he] was the opposing counsel. Since that time . . . [Burgard] has been associated with . . . Walsh on various cases and has been referred cases by . . . Walsh. [¶] On the date of the hearing [Burgard] was representing a client referred to him by . . . Walsh in a matter pending in the San Diego Court.' " (*Id.* at p. 843.)

The Court of Appeal affirmed the judgment vacating the arbitration award, adopting the rule enunciated in *Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337] (*Commonwealth*). *Johnston* quoted Justice Black's language in *Commonwealth*: " 'It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but *we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review.* We can perceive of no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that *arbitrators disclose to the parties any dealings that might create an impression of possible bias.*' (Italics added.)" (*Johnston, supra,* 6 Cal.App.3d at p. 842, quoting *Commonwealth, supra,* at pp. 148–149.)

*Johnston* also quoted the following from Justice White's concurring opinion in *Commonwealth*: " 'The arbitration process functions best when an

---

[3] Defendants criticize Luce Forward for citing cases decided in the 1970's, which predate the enactment of section 1281.9 and Standard 7. Defendants, however, rely on *Johnston,* which is a 1970 case. In *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1393 [14 Cal.Rptr.3d 341], the court stated "[w]e perceive no fundamental difference between section 1281.9's reasonable doubt of impartiality and prior case law's 'reasonable impression of partiality.' " (See also *Guseinov v. Burns, supra,* 145 Cal.App.4th 944, which discusses cases decided before enactment of § 1281.9 and Std. 7.) Because section 1281.9 and Standard 7 do not set forth every conceivable situation in which a disclosure may be required, prior opinions may be instructive, but that determination must be made on a case-by-case basis.

amicable and trusting atmosphere is preserved and there is voluntary compliance with the decree, without need for judicial enforcement. This end is best served by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator of any financial transactions which he has had or is negotiating with either of the parties.' " (*Johnston, supra*, 6 Cal.App.3d at p. 842, quoting *Commonwealth, supra*, 393 U.S. at p. 151.) The *Johnston* court found the *Commonwealth* rule "a salutary one." (*Johnston*, at p. 842.)

In *Commonwealth*, the court interpreted the federal statutory grounds for vacating an arbitration award. It held a party was entitled to have an arbitration award set aside because the supposedly neutral arbitrator did not disclose he conducted a large business in which he had served as an engineering consultant in connection with construction projects, and one of his regular customers was the opposing party. The "relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit." (*Commonwealth, supra*, 393 U.S. at p. 146.)

■ Here, the trial court properly distinguished *Johnston* on the ground the court's ruling turned on a business relationship. We agree with *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64 [148 Cal.Rptr. 282], in which the court "interpret[ed] *Johnston* as holding that the failure to disclose the existence of an acquaintanceship *involving a substantial business relationship* may indicate a possible bias justifying the vacation of an arbitration award." Defendants cite no authority for the proposition that an arbitrator's duty of disclosure arises when he or she has served on a board of directors of a professional organization with a party, a party's attorney or an expert witness.

■ In *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 939–940 [106 Cal.Rptr.2d 240], the court held that "[s]ocial acquaintance, even of long duration and of a personal nature, without a substantial business relationship does not create an impression of possible bias. [Citations.] Membership in a professional organization does not provide a credible basis for inferring an impression of bias. [Citations.] [¶] Moreover, to create an impression of possible bias that therefore requires disclosure, a business relationship must be substantial and involve financial consideration."

■ In *Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087–1088 [213 Cal.Rptr. 62], disapproved of on another ground in *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at pages 27–28, the court held a "personal relationship (acquaintance) between an arbitrator and a party to the arbitration does not require vacation of an award for possible bias. [Citation.] Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without

business contacts in the particular field. [Citation.] The fact that an arbitrator and a party to the arbitration are members of the same professional organization 'is in itself hardly a credible basis for inferring even an impression of bias.' "

In *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567 [104 Cal.Rptr. 733], the court held disclosure was not required when the arbitrator and a party's appointed appraiser "belonged to the same M.A.I. chapter." The court relied on *St. Paul Ins. Companies v. Lusis* (1971) 6 Wn.App. 205 [492 P.2d 575, 578] in which the court interpreted rules of the American Arbitration Association requiring the disclosure of a " 'relationship with any party, and any circumstance likely to create a presumption of bias.' " The court held the arbitrator was not required to disclose that he and a party's counsel had served concurrently on the board of governors of the Washington State Trial Lawyers Association, although the court relied on the notoriety of the relationship as not negating the necessity to disclose. (*Id.*, 492 P.2d at pp. 576, 580–581; see also *Bernstein v. Gramercy Mills, Inc.* (1983) 16 Mass.App.Ct. 403 [452 N.E.2d 231, 237] [citing *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co., supra*, 28 Cal.App.3d 556, 567–570 court found no reasonable impression of bias when arbitrator and party's attorney had been jointly involved in the state bar's corporate law section].)

■ In *Guseinov v. Burns, supra*, 145 Cal.App.4th 944, the issue was whether substantial evidence supported the trial court's finding there was no "professional relationship," within the meaning of section 1281.9, subdivision (a)(6), between an arbitrator and a party's attorney, when the arbitrator previously served as an uncompensated mediator in a case the attorney handled. The appellate court affirmed the ruling, explaining that the " 'ordinary and insubstantial business dealings' " arising from participation in the business or legal community do not necessarily require disclosure. (*Guseinov v. Burns, supra*, at p. 959.) Rather, " 'significant or substantial business relationships' " must be disclosed. (*Ibid.*)

Standard 7(d)(8) requires an arbitrator to disclose "[a]ny other professional relationship not already disclosed under paragraphs (2)–(7)," including: "(A) The arbitrator was associated in the private practice of law with a lawyer in the arbitration within the last two years; [¶] (B) The arbitrator or a member of the arbitrator's immediate family is or, within the preceding two years, was an employee of or an expert witness or a consultant for a party; and [¶] (C) The arbitrator or a member of the arbitrator's immediate family is or, within the preceding two years, was an employee of or an expert witness or a consultant for a lawyer in the arbitration." Although this list is not exclusive, it fairly indicates an intent to limit the definition of "professional relationships" to ones involving economic relationships. (See *Gikas v. Zolin* (1993) 6

Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745] ["The expression of some things in a statute necessarily means the exclusion of other things not expressed."].) Had the drafters intended to include membership in professional organizations (or their managing boards), in which lawyers who act as arbitrators are commonly involved, they could easily have said so.

■ Judge Haden's candor was commendable, and arbitrators should, of course, be encouraged to err on the side of disclosure. (See *Commonwealth, supra,* 393 U.S. at p. 151.) We conclude, however, that substantial evidence supports the trial court's finding that Judge Haden was not *legally required* to make any disclosures pertaining to Steiner or Hallahan. In other words, the evidence shows a reasonable person would not have had an impression of bias under the facts. There was no indication Judge Haden had a personal relationship, or close friendship, with either Steiner or Hallahan. Further, there was no indication of any business relationship between or among them. Rather, the contact was limited to serving with each other on the boards of directors of two professional organizations, and standing alone, that is insufficient. There is no disclosure requirement when "there has been some contact between the arbitrator and counsel, particularly when the contact is slight or attenuated. The *Commonwealth* case recognized that arbitrators cannot sever all their ties with the business world" (*Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 505 [55 Cal.Rptr.2d 685]), and the same is true of professional obligations involving service to the legal community and the public, continuing education for bar members, and mentoring for new lawyers.[4]

C

*Was Vacatur Required Because Judge Haden Refused to Disqualify Himself Based on Disclosures He Was Not Legally Required to Make?*

Defendants cite *Azteca, supra,* 121 Cal.App.4th 1156, in support of their contention that once an arbitrator makes a disclosure, and a party gives notice of disqualification, the right to disqualification is absolute even if the disclosures were not required by section 1281.9 or Standard 7. Defendants rely on this language: "[T]he [California Arbitration] Act permits either party *uncomfortable with the disclosures* of any proposed arbitrator to disqualify him or her within 15 days after receiving the disclosure statement." (*Azteca, supra,* at p. 1160, italics added.) They assert they were "understandably uncomfortable" with the information regarding Steiner and Hallahan.

---

[4] Because the disclosures were not required, we need not address defendants' assertion Judge Haden erred by refusing to reduce them to writing.

*Azteca,* however, interprets section 1281.91 to mean the parties have an unqualified right to remove a proposed arbitrator "based on any disclosure *required by law* which could affect his or her neutrality. . . . As long as the objection is based on a *required disclosure,* a party's right to remove the proposed neutral by giving timely notice is absolute." (*Azteca, supra,* 121 Cal.App.4th at p. 1163, fn. omitted, italics added.) Accordingly, *Azteca* does not support defendants' contention.

 Defendants assert the trial court may not "second guess the arbitrator's decision to make the disclosure," and if the arbitrator refuses to disqualify himself after making *any* disclosure, even one that is not legally required, the arbitration award must be vacated. Under section 1286.2, subdivision (a)(6)(B), however, vacatur is required if the arbitrator *"was subject to disqualification upon grounds specified in Section 1281.91* but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (Italics added.) Section 1281.91, subdivision (b)(1) provides: "If the proposed neutral arbitrator *complies with Section 1281.9,* the proposed neutral arbitrator shall be disqualified on the basis of the disclosure statement . . . ." (Italics added.) To comply with section 1281.9, an arbitrator must "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." (§ 1281.9, subd. (a).) We conclude that, read together, the statutes mean that disqualification based on a disclosure is an absolute right only when the disclosure is legally required.

 Section 1281.91 does not indicate that when an arbitrator makes additional oral disclosures at the arbitration that he was not required to make, as here, disqualification is a matter of right. Under defendants' theory, an arbitrator could be disqualified during arbitration for orally revealing even the most attenuated contact with a party's counsel or witness, such as occasionally shopping at the same grocery store. We may not interpret statutes in a manner that results in absurd and unintended consequences. (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 986 [44 Cal.Rptr.2d 93].) We cannot attribute to the Legislature an intent to upset arbitration awards based on disclosures not legally required, but made out of an abundance of caution, given this state's strong public policy in favor of finality of arbitration awards.[5]

---

[5] Because of our holding, we are not required to address Luce Forward's contention defendants waived the disqualification issue when Malcolm, the attorney for individual defendants, told Judge Haden at the end of the proceedings that "there is certainly no way my clients will ever challenge or question your impartiality."

## DISPOSITION

The judgment is affirmed. Luce Forward is entitled to costs on appeal.

Haller, J., and McIntyre, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 16, 2008, S164220.