[No. D024260. Fourth Dist., Div. One. Feb. 11, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMIRO JAIME REYES, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Robert E. Boyce and Laura G. Schaefer, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and Larissa Karpovics Hendren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—After a jury found Ramiro Jaime Reyes guilty of receiving stolen property, he was sentenced to 25 years to life in prison. The pivotal issue is whether, under Penal Code[2] sections 22 and 28, evidence of Reyes's voluntary intoxication and mental disorders is admissible to refute an essential element of the crime—that he knew the property was stolen. For the reasons discussed below, we hold such evidence is admissible, and the trial court committed prejudicial error in disallowing it. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Reyes was charged in an information with vehicular burglary (§ 459) and receiving stolen property. (§ 496, subd. (a).) The evidence adduced at trial was as follows.

Michael Conlon and Bertha Whitford were next-door neighbors. Conlon customarily parked his work truck beside his driveway, approximately 20 to 25 feet from Whitford's bedroom window. The truck was brightly illuminated by Conlon's garage light. One day shortly before 2 a.m., Whitford looked out her bedroom window and saw a man leaning into the driver's side window of Conlon's truck. The man was slightly built, had long curly black

---

[2]All statutory references are to the Penal Code.

hair and wore a white tank top and long white shorts. Whitford was not alarmed because she assumed he was Conlon's friend. Fifteen to twenty minutes later, Whitford saw the man at Conlon's truck again, after which he left in a white car idling nearby. On both occasions, Whitford saw the man only from the back and could not identify his race. Additionally, she was not wearing her corrective glasses.

Within an hour, Brett Rhoades, a police officer for the City of Chula Vista, stopped Reyes for speeding. When he searched the light-colored automobile, Rhoades found a red metal toolbox, a cellular phone and several identification badges bearing the name "Michael Conlon." Rhoades went to Conlon's home, and Conlon advised the articles had been taken from his work truck. The driver's side window was rolled down; Conlon did not recall having left it down, but agreed he might have.

Susan Rodriquez, a detective for the Chula Vista Police Department, assisted Rhoades at Conlon's home. She went next door to ask Whitford if she had heard or seen anything unusual. Rodriquez concluded from Whitford's description that Reyes was the man seen in Conlon's truck. Rodriquez thus brought Reyes in a patrol car to Whitford's home. Whitford stood either inside her front door or on her porch, while Reyes exited the patrol car handcuffed. He wore a green and white tank top and long white shorts. Whitford could not identify Reyes from the front. Based on his clothing and stature, however, she identified him from the back as the man she saw at Conlon's truck.[3]

Before trial, Reyes successfully moved to strike the vehicular burglary count because there was no evidence Conlon's truck was locked when the items were stolen. Instead of amending the information to allege theft, the People proceeded to trial solely on the receiving stolen property count.

In his defense, Reyes testified he had used controlled substances since 1978, including marijuana, cocaine, methamphetamine, LSD and heroin; he began smoking methamphetamine and cocaine a few days before the incident, and during the day before the incident he smoked two grams of methamphetamine and one gram of cocaine. Late in the evening, Reyes wanted to get cigarettes and beer; however, because he "had done too [many] chemicals, he didn't trust [himself] to drive alone . . . ." Consequently, he took along his girlfriend; however, he drove the car. Reyes could not recall where they stopped to get the items, stating, "I have trouble when

---

[3]At the preliminary hearing, Whitford was unable to identify Reyes. At trial, she identified Reyes after seeing him from the back.

I use a lot of drugs remembering things of that nature." On the way home, Reyes stopped to pick up a red toolbox and other items he spotted on a street curb. When asked why he did so, Reyes stated: "[B]ecause I have a problem. When I use drugs, I—well, in laymen's terms, people that use drugs, they call it tweaking. They just go dipster-dumpster diving. In my case, I have a problem with that. I just have a compulsion, you know, just to pick, . . . on trash cans. I've had that compulsion since I was a child. . . . [¶] In my state of mind, I think I'm treasure hunting."

Reyes also sought to introduce the testimony of a psychologist, Raymond Murphy, Ph.D., to show he lacked knowledge the property was stolen, an essential element of the crime of receiving stolen property. During the offer of proof, Dr. Murphy testified Reyes had a variety of mental disorders, including schizophrenia and "a paranoid, antisocial, and borderline style of personality disorder." Further, Reyes was "seriously disturbed emotionally in terms of his basic functioning," "showed deficits in his cognitive realm that might be identified as dementia or difficulty in basic cognitive functioning," and had a "serious, enduring history of polysubstance dependence." According to Dr. Murphy, such a person "could be functioning in a manner that was highly disorganized, distracted from reality, could be manifesting issues of delusion or hallucination, and at times severe disruption in the manner in which [he] . . . [made] decisions about how [he] did things." It would be possible for such a person to lack knowledge of his acts. The trial court, however, disallowed the testimony, finding it went to "diminished capacity," an abolished defense.

The jury convicted Reyes. He admitted to having served three prior prison terms (§ 667.5, subd. (b)), and having been convicted of two serious or violent felonies (§ 667, subds. (b)-(i)). The court indicated it was opposed to the lengthy sentence required by the three strikes law, but was without discretion to strike one of the prior felonies. Accordingly, it sentenced Reyes to 25 years to life with the possibility of parole. (§ 667, subd. (e)(1).)

On appeal, Reyes meritoriously contends the judgment must be reversed because the trial court committed prejudicial error in disallowing the proffered expert testimony regarding his voluntary intoxication and mental disorders. While the issue is dispositive, to guide the trial court on retrial, we also consider Reyes's additional contentions he could not be convicted of receiving the very property the evidence established he stole, and Whitford's in-field identification was unduly suggestive.

## DISCUSSION

### I

*Expert Testimony Re Voluntary Intoxication and Mental Disorders*

■ The diminished capacity defense, which addressed an accused's "general capacity or ability to form a specific intent or harbor a mental element of an offense," was abolished in 1982. (*People* v. *Visciotti* (1992) 2 Cal.4th 1, 56 [5 Cal.Rptr.2d 495, 825 P.2d 388]; §§ 22, subd. (a), 25, subd. (a), 28, subd. (a).[4]) Thus, evidence of voluntary intoxication or mental disorders may no longer be used as an affirmative defense to a crime. (*People* v. *Saille* (1991) 54 Cal.3d 1103, 1111-1112 [2 Cal.Rptr.2d 364, 820 P.2d 588].)

Such evidence is admissible, however, solely to negate an element of the crime which must be proven by the prosecution. (*People* v. *Visciotti, supra,* 2 Cal.4th at pp. 56-57.) At the time of trial, section 22, subdivision (b), provided: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant *actually formed a required specific intent,* premeditated, deliberated, or harbored malice aforethought, *when a specific intent crime is charged.*" (Italics added.)[5] Likewise, section 28, subdivision (a) makes evidence of mental disorders admissible solely on the issue of whether defendant "*actually formed a required specific intent . . . when a specific intent crime is charged.*" (Italics added.) Here, the People successfully argued the proffered testimony of Dr. Murphy was inadmissible because receiving stolen property has been characterized as a general intent crime as opposed to a specific intent crime.

---

[4]As amended by Statutes 1981, chapter 404, section 2, pages 1591-1592, and Statutes 1982, chapter 1983, section 2, pages 3317-3318, section 22, subdivision (a) provided: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation or malice aforethought, with which the accused committed the act." (Former § 22, subd. (a).)

Section 25, subdivision (a) provides: "The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, aforethought, knowledge, or other mental state required for the commission of the crime charged."

Section 28, subdivision (a) provides in part: "Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act."

[5]Section 22, subdivision (b) was amended in 1995, effective January 1, 1996, and now permits the admission of evidence of voluntary intoxication on the issue of whether or not the defendant actually formed a required specific intent, without regard to whether the charged crime is a specific intent crime or a general intent crime.

■ As the California Supreme Court recognized in *People* v. *Hood* (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370], "[s]pecific and general intent have been notoriously difficult terms to define and apply."

"*Hood* addressed the question whether the defendant's voluntary intoxication could be considered in determining whether he or she committed the crime of assault. Observing that '[t]he distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender' [citation], [the] court formulated the following general rule: 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' [Citation.]

"Having stated the general rule, however, the court in *Hood* concluded that this definition should not be applied mechanically and was insufficient to resolve the question before the court, because the crime of assault could equally well be characterized as either a specific or a general intent crime. [Citation.] The court thus concluded that 'the decision whether or not to give effect to evidence of intoxication [in a prosecution for assault] must rest on other considerations.' [Citation.]" (*People* v. *Whitfield* (1994) 7 Cal.4th 437, 449 [27 Cal.Rptr.2d 858, 868 P.2d 272].)

A "compelling consideration" in *Hood* was the effect of intoxication on human behavior. (*People* v. *Hood, supra,* 1 Cal.3d at p. 458.)

"A general intent crime may also involve a specific mental state, such as knowledge." (*People* v. *Cleaves* (1991) 229 Cal.App.3d 367, 380 [280 Cal.Rptr. 146].) "Among the several definitions of 'knowledge' are the following: 'the fact or condition of being cognizant, conscious, or aware of something'; 'the scope of one's awareness'; 'extent of one's understanding'; 'the fact or condition of apprehending truth, fact, or reality immediately with the mind or senses.' [Citations.]" (*People* v. *Foster* (1971) 19 Cal.App.3d 649, 655 [97 Cal.Rptr. 94].) In *People* v. *Foster,* where unlawful possession of narcotics was charged, the court held, "[i]t is apparent that to convict the accused of the crime . . . , the People must, in addition to proving general intent to possess the substance constituting the contraband, prove that the accused had knowledge that the material in his possession was a narcotic." (*Id.* at p. 655.) In determining the latter, "[i]ntoxication has obvious relevance to the question of awareness, familiarity, understanding and the ability to recognize and comprehend." (*Ibid.*)

In *People* v. *Whitfield, supra,* 7 Cal.4th 437, the court held that evidence of voluntary intoxication was admissible, notwithstanding classification of the crime—murder in the second degree based on implied malice—as one of general intent. "Malice is implied ' "when a person does an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life. . . . [Citations.]" ' [Citation.]" (*Id.* at p. 450.) The court reasoned, "Although it can be argued that implied malice does not constitute a specific intent as described in *Hood* because it does not involve an 'intent to do some further act or achieve some additional consequence,' it is quite clear that implied malice does not fit *Hood*'s description of general intent, which is 'an intent merely to do a violent act.' [Citation.] Although implied malice may not fall literally within the *Hood* formulation of specific intent, the element of implied malice that requires that the defendant *act with knowledge* of the danger to, and in conscious disregard of, human life, is closely akin to *Hood*'s definition of specific intent, which requires proof that the defendant acted with a specific and particularly culpable mental state. Thus, read in context, the phrase 'when a specific intent crime is charged' in section 22 includes murder, even where the prosecution relies exclusively upon the theory that malice is implied, rather than express."[6] (*People* v. *Whitfield, supra,* 7 Cal.4th at p. 450, italics added, fn. omitted.) Under *Hood* and *Whitfield*, ". . . the criteria of specific intent for [the purpose of section 22] are not necessarily the same as the criteria of specific intent as a measure of the scienter required for an offense." (*People* v. *Fabris* (1995) 31 Cal.App.4th 685, 696, fn. 10 [37 Cal.Rptr.2d 667].)

■ Applying the above principles to this case, we conclude Dr. Murphy's testimony was admissible. ■ "[P]roof of the crime of receiving stolen property requires establishing that the property in question was stolen, that the defendant was in possession of it, and that the defendant knew the property to be stolen."[7] (*People* v. *Anderson* (1989) 210 Cal.App.3d 414, 420 [258 Cal.Rptr. 482].) Conscious possession of recently stolen property alone is insufficient to permit the inference defendant knew the property was

---

[6] As part of the 1995 amendment to section 22, subdivision (b), evidence of voluntary intoxication is no longer admissible on the issue of implied malice aforethought (Stats. 1995, ch. 793, § 1), thus superseding the holding of *People* v. *Whitfield.* However, the court's analysis remains germane to the admissibility of evidence of intoxication to refute the element of knowledge in other types of crimes, such as receiving stolen property.

[7] Section 496, subdivision (a) provides in relevant part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison, or in a county jail for not more than one year."

stolen, however, "the attributes of the possession—time, place, and manner —may furnish the additional quantum of evidence needed. [Citation.]" (*People* v. *Hallman* (1973) 35 Cal.App.3d 638, 641 [110 Cal.Rptr. 891].) "[P]roof of knowing possession by a defendant of recently stolen property raises a strong inference of the other element of the crime: the defendant's knowledge of the tainted nature of the property. This inference is so substantial that only 'slight' additional corroborating evidence need be adduced in order to permit a finding of guilty. [Citation.]" (*People* v. *Anderson*, *supra*, 210 Cal.App.3d at p. 421.)

■ It has been held that "[u]nder present section 496, while a specific fraudulent intent by the perpetrator (e.g., for his own gain or to prevent the owner from again possessing his property) is not an element of the crime which the prosecution must prove, the absence of any such guilty intent is a defense which, if established, disproves the charge. [Citations.]" (*People* v. *Osborne* (1978) 77 Cal.App.3d 472, 476 [143 Cal.Rptr. 582].) "[T]he mere receipt of stolen goods with knowledge they have been stolen is not itself a crime if the property was received with intent to restore it to the owner without reward or with any other innocent intent [citation]. The critical factor is the defendant's intent at the time he receives or initially conceals the stolen property from the owner. The intent to restore must exist at the moment the stolen property is accepted by the receiver if he is to be acquitted. If the defendant received or concealed stolen property with general criminal intent to aid the thief, or to deprive the owner of possession . . . he possesses the requisite wrongful intent . . . ." (*People* v. *Wielograf* (1980) 101 Cal.App.3d 488, 494 [161 Cal.Rptr. 680].)

■ Thus, here, as in *People* v. *Whitfield, supra*, 7 Cal.4th 437, 450, the classification of the crime as one of general intent has nothing to do with the required element of knowledge, a specific mental state. "[I]f a crime requires a particular mental state, the Legislature *cannot* deny a defendant the opportunity to prove he did not entertain that state." (*People* v. *Bobo* (1990) 229 Cal.App.3d 1417, 1442 [3 Cal.Rptr.2d 747].) "[T]he defendant's evidence of intoxication can no longer be proffered as a defense to a crime but rather is proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt. In such a case the defendant is attempting to relate his evidence of intoxication to an element of the crime." (*People* v. *Saille, supra*, 54 Cal.3d at p. 1120.) ■ Accordingly, we hold that with regard to the element of knowledge, receiving stolen property is a "specific intent crime," as that term is used in section 22, subdivision (b), and section 28, subdivision (a).

While Reyes testified he was intoxicated with drugs when found with Conlon's property, the court instructed the jury that receiving stolen property

was solely a general intent crime, to which voluntary intoxication was no defense; correspondingly, the court refused Reyes's request for instructions that "there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator," and that the "mental state with which an act is done may be shown by the circumstances surrounding the commission of the act." We conclude the total preclusion of evidence regarding Reyes's myriad of mental disorders, and their exacerbation by drug abuse, unfairly denied him the opportunity to prove he lacked the requisite knowledge. That, in conjunction with instructional errors resulting from the court's misapplication of sections 22 and 28, prejudiced Reyes and requires reversal of the judgment.[8]

## II

### *Thief's Conviction for Receiving Stolen Property*

■ Historically, a thief could not be convicted under section 496 of receiving the property he stole. (*People* v. *Strong* (1994) 30 Cal.App.4th 366, 372 [35 Cal.Rptr.2d 494].) In 1992, however, the Legislature amended section 496, effective January 1, 1993 (Stats. 1992, ch. 1146, § 1), to include the following provision in what is now subdivision (a): "A principal in the actual theft of the property may be convicted [of receiving stolen property]. However, no person may be convicted both pursuant to this section and of the theft of the same property." In amending the statute, the Legislature's intent was "to provide for the prosecution of principals in the actual theft of the property who continue to possess that property after the statute of limitations has run on the theft of the property." (Stats. 1992, ch. 1146, § 2.) "The Legislative Counsel's Digest noted that the new provision 'increas[ed] the scope of an existing crime.' (Legis. Counsel's Dig., Assem. Bill No. 3326 (1991-1992 Reg. Sess.).)" (*People* v. *Strong, supra,* 30 Cal.App.4th at p. 373.)

Relying exclusively on *In re Kali D.* (1995) 37 Cal.App.4th 381 [43 Cal.Rptr.2d 581], Reyes argues he could not be convicted of receiving the property, because the evidence established he stole it. In *In re Kali D.,* the court stated: "In construing the literal meaning of section 496, subdivision (a), with the express declaration of legislative intent, it appears to us that the Legislature intended the statute to be applied only to thieves who continue to possess the stolen property after the statute of limitations has expired on theft. Such a construction affords full force and effect to the statutory amendment, the enacted bill's statement of legislative intent, and harmonizes

---

[8]Our holding moots consideration of Reyes's arguments regarding other jury instructions and ineffective assistance of counsel for failure to request an instruction.

them with existing law." (*Id.* at p. 386.) We respectfully disagree with the *In re Kali D.* court's analysis of the 1992 amendment.

■ "A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. [Citation.] In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. [Citation.] Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. [Citation.]" (*Home Depot, U.S.A., INC.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1600-1601 [49 Cal.Rptr.2d 302].) "Significance should be given, if possible, to every word of an act, and a construction that renders a word surplusage should be avoided. [Citation.]" (*Id.* at p. 1602.)

" 'However, the " 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose . . ." and provisions relating to the same subject matter must be construed together and "harmonized to the extent possible." ' [Citation.] 'An interpretation that renders related provisions nugatory must be avoided.' [Citation.]" (*Travelers Indemnity Co.* v. *Maryland Casualty Co.* (1996) 41 Cal.App.4th 1538, 1543 [49 Cal.Rptr.2d 271].) "Literal construction of statutory language will not prevail if contrary to the legislative intent apparent in the statutory scheme. [Citation.]" (*Gomes* v. *County of Mendocino* (1995) 37 Cal.App.4th 977, 986 [44 Cal.Rptr.2d 93].)

■ Under the plain language of the provision in question, a thief may be convicted of receiving the property he stole, without regard to whether a theft charge is time barred. We are constrained to literally interpret the statute, unless doing so would violate the Legislature's intent—to avoid the situation where a thief could retain possession of stolen property with impunity, because the statute of limitations on the theft had expired. We conclude it would not, as there is no indication the Legislature intended to *limit* prosecution of a thief under section 496 to situations in which a theft charge was no longer an option. To the contrary, such a limitation would render meaningless the provision's second sentence, which states: "However, no person may be convicted both pursuant to this section and of the theft of the same property." A person could only be convicted of both crimes if (1) he or she was the actual thief of the property, and (2) the statute of limitations on a theft charge had not expired. A literal interpretation of second paragraph of section 496, subdivision (a) harmonizes with legislative intent, and avoids rendering a critical portion of the provision nugatory.

In any event, even under the holding of *In re Kali D.*, Reyes's argument fails. There, ". . . appellant was apprehended with the cassette tapes in his

physical possession. He admitted that he removed the tapes from the victim's apartment; the only issue was whether he received permission to take them," and thus the court could not "imagine a set of facts in which it is more clear that the defendant was the person who actually took the property." (*In re Kali D., supra,* 37 Cal.App.4th at p. 387.) Here, Reyes denied he took Conlon's property, and thus there was a question as to the perpetrator's identity. As held in *People* v. *Price* (1991) 1 Cal.4th 324, 464 [3 Cal.Rptr.2d 106, 821 P.2d 610]: "With certain limited exceptions, a defendant may not be convicted of stealing and receiving the same property.[9] [Citation.] This does not mean, however, that when the prosecution has charged only receiving, it must establish by affirmative proof that someone other than the defendant stole the property. [Citations.] A conviction for receiving stolen property may be based on evidence 'that the property in question was stolen, that the defendant was in possession of it, and that the defendant knew the property to be stolen' [citation], even though the evidence also strongly suggests that it was the defendant who stole the property. [Citation.]" Such was the situation here.

III*

*Identification Evidence*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed.

Nares, J., and McIntyre, J., concurred.

A petition for a rehearing was denied February 28, 1997, and respondent's petition for review by the Supreme Court was denied May 14, 1997. Kennard, J., Baxter, J., and Brown, J., were of the opinion that the petition should be granted.

---

[9]*People* v. *Price* was decided before the 1992 amendment to section 496, subdivision (a).
*See footnote 1, *ante,* page 975.