Filed 2/11/16  In re L.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE L.G., a Person Coming Under the Juvenile Court Law. | H042392 (Santa Clara County Super. Ct. No. 311JV38296G) |
| THE PEOPLE, Plaintiff and Respondent, v. L.G., Defendant and Appellant. | |

## I.  INTRODUCTION

The minor, L.G., appeals from a dispositional order committing him to an enhanced ranch program for six to eight months, following findings by the juvenile court that he received a stolen vehicle (Pen. Code, § 496d) and committed misdemeanor battery on school property (*id.*, §§ 242, 243.2).  The minor contends that there is insufficient evidence to sustain the juvenile court's finding that he received a stolen vehicle, and that the court failed to determine whether the offense of receiving a stolen vehicle was a felony or a misdemeanor pursuant to Welfare and Institutions Code section 702.[1]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

For reasons that we will explain, we agree with the minor's second contention. We will reverse the dispositional order and remand the matter for the juvenile court to declare whether the offense of receiving a stolen vehicle is a felony or misdemeanor.

## II. BACKGROUND

### A. *The Petition*

The minor has been the subject of several section 602 petitions since he was 12 years old. Relevant to this appeal, on March 16, 2015, a petition was filed alleging that the minor, then age 16, committed vehicle theft (Veh. Code, § 10851, subd. (a); count 1, a felony), battery on school property (Pen. Code, §§ 242, 243.2; count 2, a misdemeanor), and resisted, delayed, or obstructed a peace officer (*id.*, § 148, subd. (a)(1); count 3, a misdemeanor).

In April 2015, an amended petition was filed alleging in count 1 that the minor received a stolen vehicle (Pen. Code, § 496d; a felony) on or about March 16, 2015. Counts 2 and 3, for battery on school property and resisting a peace officer, remained the same. The minor allegedly received the stolen vehicle (count 1) and resisted a peace officer (count 3) about a week after committing the battery on school property (count 2).

### B. *The Jurisdictional Hearing*

The evidence presented at the contested jurisdictional hearing included the following.

### 1. Receiving a stolen vehicle and resisting a peace officer (counts 1 & 3)

In approximately mid-March 2015, the owner of an older model, four-door Honda parked her vehicle on the street in front of her house around 7:30 p.m. She locked the doors to the vehicle, and the windows were rolled up. She never moved the vehicle again that evening and never gave anyone permission to use the vehicle that night. The following morning at 2:00 a.m., a police officer came to the vehicle owner's house and asked about her vehicle. The owner discovered that her vehicle was not where she had parked it.

San Jose Police Officer Alan Yee was on duty the night of March 15, 2015. Near the beginning of his shift, about 10:00 p.m., he noticed an unoccupied, older model, four-door Honda vehicle. His attention was drawn to the vehicle because its front windows were rolled down and several males left the area of the vehicle in a rush. At the time, Officer Yee and Officer Ferrante were speaking to other people on an unrelated car stop. After concluding the car stop, the two officers looked at the Honda vehicle. The ignition had been "punched" and was in the "on" position without a key. The lights on the keyhole and the "odometer hub area" were on, but the engine was not on. There were wires coming out of the radio area, and the front doors were unlocked. The officers ran the vehicle's plate through the "stolen vehicle system," but "it did not come back stolen." The officers believed, however, that "it might have been an unreported stolen vehicle."

Police officers investigating whether a vehicle is stolen look for suspicious items and damage to the vehicle, such as a "punched keyhole." According to Officer Yee, an older model Honda "is extremely easy to get into. Any kind of object can fit the keyhole." A vehicle that is vacated, has its engine off, and has all of its windows down is often a stolen vehicle. Officer Yee explained that people usually lock their vehicle doors and close the windows, but people who steal a vehicle do not "close it up properly because they don't really care."

Officers Yee and Ferrante decided to let the Honda vehicle "sit for a bit" to see whether it was eventually reported stolen or if the suspects returned to the vehicle. When the officers returned to the area of the Honda vehicle early the next morning about 1:53 a.m., they approached the vehicle on foot from the rear. The area was a well-known high crime area. When Officer Yee was about 100 yards away from the vehicle, he heard music coming from the direction of the vehicle. He thought the music might have been coming from an apartment, but he later determined that the music was coming from inside the vehicle from a portable speaker.

As Officer Yee got closer to the vehicle, he saw an object outside the vehicle on the passenger's side. It was very dark outside, he did not know if the object was a person, and he had concerns about officer safety. The rear windows on the vehicle were also tinted. At some point, Officers Yee and Ferrante saw shadows moving inside the vehicle. They used their flashlights to illuminate the whole vehicle when they were about 30 to 40 feet away. They determined that the object adjacent to the car was a car seat. When the officers shined their flashlights, three doors on the vehicle "all fl[ew] open" – the driver's side door and the front and rear passenger's side doors. The officers approached more rapidly, and Officer Yee yelled, "San Jose police," and "[S]top." As he yelled, "[S]top," people came out of the vehicle doors.

Officer Ferrante was on the passenger's side of the vehicle about 30 feet away. Two occupants exiting on the passenger's side ran towards the front of the vehicle and away from Officer Ferrante. The officer pursued the two people but ultimately terminated the pursuit without apprehending them.

The minor was in the driver's seat and tried to exit the driver's side door. The door got "stuck" against an adjacent vehicle so the minor could not go around the door towards the front of the vehicle similar to the other two occupants. Officer Yee approached and again announced himself and said, "[S]top." The officer pushed the minor back into the car, tried to push the door closed, and told the minor "don't move" while the officer's gun was drawn. The minor stated that his leg was stuck in the door, so the officer allowed the minor to pull his leg back in the vehicle. The minor complied with the officer's order to leave his hands on the steering wheel.

After the minor was detained in a patrol car, Officer Yee investigated the Honda vehicle. Although there was no key in the ignition and the engine was not running, the ignition was "still on" and the electrical system was on. There were more electronic devices inside the vehicle this time, including a portable speaker emitting the music that Officer Yee had heard when he approached the vehicle. The minor claimed that the

4

electronic devices, including the portable speaker, were his and asked the officer to retrieve them. The portable speaker, or some other electronic device that the minor claimed was his, "was hooked up to the vehicle inside the electrical socket, in [the] adapter socket." The officers searched for "any kind of shaved key" but did not find any.

The police went to the vehicle owner's residence and confirmed that the vehicle was stolen. She was taken to the vehicle's location, which was about a 10-minute walk or five-minute drive from where she lived and by some apartments. Upon seeing the vehicle, the owner discovered that a car seat for one of her children was outside the vehicle, but that a second car seat for her other child was missing. There was "some garbage and smelly stuff" in the vehicle, but the owner indicated that some of the garbage was the result of her children making a mess. There was a hat in the vehicle that did not belong to the victim or her children. The victim did not see any damage to the vehicle, and she did not take it in for any repairs. The victim did not know the minor.

### 2. Battery on school property (count 2)

About a week before the incident involving the Honda vehicle, the minor was at school and threw a water bottle at another student, who was 16 years old. The bottle hit the victim in the stomach. The victim confronted the minor and threw a water bottle at his face. The minor repeatedly struck the victim on her face with his hand.

### 3. The parties' arguments regarding receiving a stolen vehicle (count 1)

At the close of evidence, the prosecutor contended that the minor had received a stolen vehicle in violation of Penal Code section 496d. The prosecutor argued that the minor withheld the vehicle from its owner based on evidence that the minor was in the driver's seat of the vehicle when the police stopped him. Further, there was circumstantial evidence that the minor knew the vehicle was stolen. The ignition was in the "on" position without a key in the ignition. Also, there was a car seat next to the vehicle, and the minor and the other occupants of the vehicle attempted to flee when police shined their flashlights and yelled, "Stop! Police!"

5

The minor contended that the evidence did not show beyond a reasonable doubt that he "knew the vehicle was stolen as opposed to merely abandoned or unattended." The minor pointed to evidence that the vehicle was already unlocked with the windows down around 10:00 p.m. when Officer Yee first noticed the vehicle. When the police later investigated the vehicle, the minor and other occupants were playing music on their speakers, the vehicle was not running, and no key was found. According to the minor, a "reasonable conclusion to draw from this circumstantial evidence is that [the minor] and his friends came up and saw the car, didn't know whether it was stolen, abandoned or unattended, maybe didn't care, got inside and just wanted to spend some time together hanging out and listening to music." The minor argued that being in possession of an item that was recently stolen was not enough, and that there needed to be "additional indicia of the state of mind of the person who had the car, specifically that [the person] knew that the item was stolen."

The minor also contended that the prosecution had not proven beyond a reasonable doubt that he possessed, controlled, or withheld the vehicle from the owner. Regarding "withholding," the minor contended that the owner did not realize the vehicle was stolen until after he had been arrested. Regarding possession and control, the minor argued that mere presence or access to a stolen item was not enough, and that there needed to be proof of actual dominion and control. The minor contended that there was no evidence he or anyone with him moved the vehicle at any point during the night. Further, no key was found in the ignition, in the car, or on the minor's person, nor was any "makeshift" key found. The minor argued that the evidence showed at most his transitory presence in the vehicle.

The minor further contended that, as to fleeing from the vehicle, it was very dark outside and "things happened so fast." He and the other occupants of the vehicle could have reasonably concluded that the people approaching were police officers or, because it was a high crime area, the person coming was the actual owner or a person coming to rob

6

them. Although the officers may have identified themselves and yelled for the occupants to stop, the music was so loud that the officer could hear it from 100 yards away, and it could not be determined beyond a reasonable doubt that the minor heard the officer. However, once the minor knew it was the police, he complied with their orders. The minor argued that it was unclear when he knew they were police, when he reasonably should have known they were police, and what his intentions were in getting out of the car. According to the minor, if unknown people were approaching from behind in the dark, it was reasonable to want to get out and see who they were.

In rebuttal, the prosecution argued that there was sufficient evidence defendant knew the vehicle was stolen. In particular, a reasonable person would conclude that the car was stolen when the vehicle was working without a key in the ignition. Further, some level of culpability was shown by the fact the occupants of the vehicle fled as soon as a flashlight was shined in their direction. It indicated that the occupants knew they were in a stolen vehicle, that they did not want to get caught, and that therefore they ran. Moreover, the speed at which they fled indicated that they probably believed it was the police. They also knew the vehicle was not their property, in view of the car seat being thrown out next to the vehicle. The prosecution also argued that there was evidence of dominion and control, given that the minor was sitting in the driver's seat of the vehicle.

### 4. The juvenile court's ruling

After hearing argument from the parties, the juvenile court took the matter under submission. The court rendered its decision at a subsequent hearing on May 4, 2015. The court determined that the prosecution had proven beyond a reasonable doubt that the minor received a stolen vehicle (count 1) and committed a battery on school property (count 2), but that it had not proven beyond a reasonable doubt that the minor resisted or delayed an officer (count 3).

Regarding count 1, receiving a stolen vehicle, the court observed that defendant raised "the possible issue of abandonment. Abandonment must be seen through the eyes

7

of the owner.  An automobile evokes the expectation of ownership and there is no evidence here that the car was wrecked, dismantled or inoperative or displayed any signs that would suggest that it was not subject to ownership.  It's not a defense if others originally stole the vehicle.  One can infer knowledge of the stolen character of the car by the fact that the defendant did not have permission, his presence under suspicious circumstances and his immediate attempt at flight.  Flight shows not only a consciousness of guilt which is inconsistent with merely being in or thinking that they are in an abandoned car.  [Flight] also shows their intent to deprive the owner of possession.  Defendant raises the issue that the presence alone is insufficient[.]  [W]hile mere presence is insufficient presence plus other circumstances here such as the time of night, not having any key, the removal of property from the car and listening to music all show dominion and control over that vehicle."

The juvenile court did not declare at the hearing whether the offense of receiving a stolen vehicle was a misdemeanor or felony.

### C.  *The Dispositional Hearing*

At the dispositional hearing on May 18, 2015, the parties indicated to the juvenile court that they agreed the minor should go to the ranch.  The juvenile court continued the minor as a ward of the court and ordered him committed to the Santa Clara County Juvenile Rehabilitation Facilities' enhanced ranch program for six to eight months, among other orders.  At the hearing, the court did not declare whether the offense of receiving a stolen vehicle was a misdemeanor or felony.

## III.  DISCUSSION

### A.  *Sufficiency of the Evidence*

Regarding the count for receiving a stolen vehicle (Pen. Code, § 496d), the minor contends there is not substantial evidence to support the juvenile court's findings that he knew the vehicle was stolen and that he had possession of it.  The minor contends that, as a result, his state and federal constitutional rights were violated.  The Attorney General

8

responds that there is substantial evidence to support the court's findings on these two elements of the crime.

We first set forth the standard of review and the elements of receiving a stolen vehicle before considering the parties' specific arguments regarding the sufficiency of the evidence.

## 1. The standard of review

" 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.' [Citation.]" (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994 (*Cesar V.*).) The People must prove beyond a reasonable doubt that the minor committed the offense alleged in the section 602 petition. (*People v. Trujeque* (2015) 61 Cal.4th 227, 247; § 701.)

On appeal, the test is " ' "whether there is substantial evidence to support the conclusion of the trier of fact." ' " (*Cesar V.*, *supra*, 192 Cal.App.4th at p. 995.) In undertaking this inquiry, we " ' "view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*Ibid.*) "An appellate court must accept logical inferences that the [factfinder] might have drawn from . . . circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396 (*Maury*).) " 'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' [Citation.]" (*People v. Raley* (1992) 2 Cal.4th 870, 891.) "Evidence is sufficient . . . only if it is substantial, that is, if it ' "reasonably inspires confidence" ' [citation], and is 'credible and of solid value.' [Citations.]" (*Ibid.*) " ' "If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding." ' " (*Cesar V.*, *supra*, at p. 995; accord, *People v. Lindberg* (2008)

9

45 Cal.4th 1, 27 (*Lindberg*).) "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*Lindberg*, *supra*, at p. 27.)

## 2. Elements of receiving a stolen vehicle

Penal Code section 496d, subdivision (a) punishes "[e]very person who buys or receives any motor vehicle . . . that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any motor vehicle . . . from the owner, knowing the property to be so stolen or obtained . . . ." "Consequently, to sustain the People's petition on the receiving stolen property count, the People must prove (1) the property was stolen; (2) the defendant knew it was stolen; and (3) the defendant had possession of it. [Citations.]" (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 728 (*Anthony J.*).)

## 3. Knowledge

The juvenile court determined that the minor knew the vehicle was stolen because he "did not have permission, his presence under suspicious circumstances and his immediate attempt at flight." The court rejected the theory that the minor believed the vehicle was abandoned. The court reasoned that a vehicle "evokes the expectation of ownership," there was no evidence the vehicle was "wrecked, dismantled or inoperative or displayed any signs that would suggest that it was not subject to ownership," and defendant's flight was "inconsistent" with a belief that the vehicle was abandoned.

On appeal, the minor contends that there was not substantial evidence to support the trial court's finding that he knew the vehicle was stolen. The Attorney General responds that there was substantial evidence based on the fact that the minor was found in possession of the vehicle shortly after it was stolen, the condition of the vehicle, and the minor's attempted flight from the vehicle.

"Knowledge that property was stolen can seldom be proved by direct evidence and resort must often be made to circumstantial evidence." (*People v. Vann* (1974) 12 Cal.3d

220, 224 (*Vann*).) An inference may arise that the defendant knew the property was stolen if there are "circumstances which should signal [to the defendant] that the property tendered has been taken by theft by larceny." (*People v. Kunkin* (1973) 9 Cal.3d 245, 255.)

"Conscious possession of recently stolen property alone is insufficient to permit the inference defendant knew the property was stolen." (*People v. Reyes* (1997) 52 Cal.App.4th 975, 984-985 (*Reyes*).) "[T]here may be an innocent explanation for the circumstance of possession. ' "The real criminal . . . may have artfully placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight, and found by the possessor, or have been taken from him in order to restore it to the true owner, or otherwise have come lawfully into his possession." ' [Citations.]" (*People v. Najera* (2008) 43 Cal.4th 1132, 1138.)

Nonetheless, " '[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]' [Citation.]" (*Vann*, *supra*, 12 Cal.3d at p. 224; see *People v. Anderson* (1989) 210 Cal.App.3d 414, 422 [possession of property a month or more after it was stolen may be considered recently stolen depending on the circumstances].) " '[T]he attributes of the possession—time, place, and manner—may [also] furnish the additional quantum of evidence needed. [Citation.]' [Citation.]" (*Reyes*, *supra*, 52 Cal.App.4th at p. 985.)

In this case, the juvenile court found that the minor's presence in the vehicle "under suspicious circumstances, and his immediate attempt at flight" established that the minor knew the vehicle was stolen. We determine that substantial evidence supports the trial court's finding that the minor knew the vehicle was stolen.

First, it was plainly obvious that someone had tampered with the vehicle, and it is reasonable to infer that the minor knew that the vehicle had been tampered with. The

minor was not inside the vehicle when Officer Yee first noticed the vehicle around 10:00 p.m., but the minor was sitting inside the vehicle when the officer later returned around 2:00 a.m. Accordingly, it must have been late at night or in the very early morning when the minor entered the vehicle. During that timeframe, the vehicle's front windows were rolled down and its front doors were unlocked. The ignition was in the "on" position without a key, the lights on the keyhole and the odometer area were on but the engine was not, and there were wires coming out of the radio area. The minor must have been aware of these aspects of the vehicle, because he was sitting in the front seat and relying on the vehicle's electrical system to power his own electrical device.

Second, it is reasonable to infer that the minor knew the vehicle had been tampered with and moved from another location and hence stolen, rather than tampered with at its current location. In this regard, the minor was playing music that was loud enough for Officer Yee to hear when he was about 100 yards away. Given that it was 2:00 a.m. and the vehicle was parked by some apartments, the minor must have known that playing loud music in the vehicle might attract attention, including from the vehicle's owner who possibly lived in the nearby apartments. Indeed, Officer Yee originally thought the music was coming from an apartment. Nonetheless, the minor, who just happened to have with him an electrical device that could be plugged into a vehicle's "adapter socket," plugged the device into the vehicle's electrical system and played music loud enough for someone in the apartments to hear. The minor apparently felt comfortable enough in the vehicle and planned to sit for some period of time in the vehicle, in view of his activities in the vehicle and the attention it would naturally draw to the vehicle. Under the circumstances, a reasonable inference arises that the minor believed or knew the vehicle's owner did not live within earshot, including at the nearby apartments, and thus knew the vehicle had been tampered with and stolen from another location. At the same time, the minor's immediate flight from the vehicle upon the vehicle being illuminated by flashlights supports the inference of the minor's

consciousness of guilt.  (See *People v. Taylor* (1969) 2 Cal.App.3d 979, 983 [the defendant's knowledge that a gun he possessed was stolen "could reasonably be inferred from his apparent flight" among other circumstances]; *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577 ["A rational trier of fact could have inferred that appellant knew the truck was stolen when he drove it, based upon the circumstances of his flight and statements he made to the police"].)

In sum, viewing the evidence in the light most favorable to the prosecution, as we must (*Cesar V.*, *supra*, 192 Cal.App.4th at p. 995), and based on evidence that the minor was occupying a vehicle that had recently been stolen, the obvious condition of the vehicle, the minor's activities in the vehicle, and his immediate flight from the vehicle upon being approached, we determine that substantial evidence supports the juvenile court's finding that the minor knew the vehicle was stolen.  (See *Vann*, *supra*, 12 Cal.3d at p. 224; *Reyes*, *supra*, 52 Cal.App.4th at p. 985.)

We are not persuaded by the minor's arguments regarding evidence that the vehicle was abandoned and/or inoperable.  To the extent there was evidence that might have indicated the vehicle was abandoned or inoperable, there was certainly evidence from which the juvenile court could have properly concluded that the minor knew the vehicle was *not* abandoned or inoperable.  As the reviewing court, we do not reweigh the evidence, and reversal is not required merely because the trial court could have reached a contrary finding.  (*Lindberg*, *supra*, 45 Cal.4th at p. 27; *Cesar V.*, *supra*, 192 Cal.App.4th at p. 995.)  In this regard, for example, there was evidence that the vehicle's owner had driven the vehicle only hours before the minor was found in the vehicle, that the owner used the vehicle to transport two children who were young enough to be in car seats, and that the owner had no trouble operating the vehicle upon recovering it.  From this evidence the juvenile court could reasonably conclude that the vehicle's interior and exterior were not in such a state that a passerby would think it was abandoned or inoperable.  Further, Officer Yee upon initially inspecting the vehicle thought it might

13

have been stolen and planned to return to the vehicle a few hours later. Officer Yee gave no indication in his testimony that he thought the appearance or condition of the vehicle suggested it had been abandoned or was inoperable and that it needed to be towed away. Moreover, the vehicle's electrical system was working at least to some extent, given that there were some lights on in the vehicle and the minor was able to operate an electrical device that was plugged into the vehicle. In addition, the minor and the other occupants of the vehicle immediate fled upon being discovered in the vehicle. Under the circumstances, the juvenile court could reasonably conclude that the minor knew the vehicle was *not* abandoned or inoperable.

We are not persuaded by the minor's contention that it was "reasonable to conclude that [he] tried to exit the vehicle in response to perceived danger [in a high-crime neighborhood] and/or to avoid apprehension for violating probation – not to avoid arrest for sitting in a stolen car." There was no evidence at the jurisdictional hearing regarding danger the minor might have perceived that would have caused him to immediately flee upon being illuminated by flashlights, nor was there evidence that the minor was on probation or was violating probation. Moreover, it would have been reasonable for the juvenile court to assume that if the minor actually perceived danger in the area because it was a high crime area, or was worried about violating probation, the minor would *not* have been spending time in a vehicle that belonged to a stranger and that had obviously been tampered with, and drawing attention to himself by playing loud music near residences in the early morning hour. As the reviewing court, we may not reweigh the evidence and we "must accept logical inferences that the [factfinder] might have drawn from . . . circumstantial evidence." (*Maury*, *supra*, 30 Cal.4th at p. 396; see *Lindberg*, *supra*, 45 Cal.4th at p. 27.) Further, " ' "[i]f the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding." ' " (*Cesar V.*, *supra*, 192 Cal.App.4th at p. 995; accord, *Lindberg*, *supra*, at p. 27.)

14

In support of his contention that there is not substantial evidence to support a finding that he knew the vehicle was stolen, the minor argues that the facts of his case are similar to *Anthony J.*, where the appellate court determined that there was insufficient evidence to sustain a petition for receiving a stolen vehicle. (*Anthony J.*, *supra*, 117 Cal.App.4th at pp. 721, 722.) The appellate court's conclusion, however, was based on a determination that there was not substantial evidence to support the *possession* element. (*Id.* at p. 729 ["the People's evidence did not demonstrate beyond a reasonable doubt that Anthony J. had possession of the vehicle, either actual or constructive"]; see also *id.* at pp. 728, 733 ["Anthony J.'s testimony did not supply any such facts to support the possession element"].) The court did not address the sufficiency of the evidence regarding the *knowledge* element. *Anthony J.* therefore does not advance the minor's argument in the instant case.

Although the minor in his opening brief on appeal raises the issue of his "low IQ score and . . . developmental disorder" in connection with the element of possession, to the extent the minor suggests that those factors are relevant to the element of knowledge because those conditions affected his ability to know that the vehicle was stolen, we are not persuaded by his argument. No evidence was presented nor was any argument made by the minor at the jurisdictional hearing regarding him having a low IQ, having been diagnosed with a developmental disorder, or the effect that those conditions would have on him regarding knowing the vehicle was stolen.

Accordingly, we determine that substantial evidence supports the juvenile court's finding that the minor knew the vehicle was stolen.

### 4. Possession

The minor contends that the evidence relied on by the juvenile court – including the time of night, not having a key, the removal of property from the vehicle, and listening to music – did not support a finding that he possessed the vehicle, and that there

15

is not substantial evidence to otherwise support such a finding regarding his possession of the vehicle.

The Attorney General contends that there is substantial evidence of the minor's possession of the vehicle, including that the minor was in the driver's seat, two car seats were removed and one of them was located next to the vehicle, the minor used the vehicle's electrical system to power one of his electrical devices, and there was a hat and extra garbage in the vehicle that did not belong to the owner.

"The requisite possession of the stolen property may be either actual or constructive, and need not be exclusive. In fact, physical possession is not required, as it is sufficient if the defendant acquires a measure of control or dominion over the stolen property. However, mere presence near the stolen property in and of itself is insufficient evidence of possession to sustain a conviction for receiving stolen property. [Citation.]" (*Anthony J.*, *supra,* 117 Cal.App.4th at p. 728.) "Dominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements. Of course, the necessary additional circumstances may, in some fact contexts, be rather slight. [Citations.] It is clear, however, that some additional fact is essential." (*People v. Zyduck* (1969) 270 Cal.App.2d 334, 336 (*Zyduck*).)

To show possession of a stolen vehicle, "[p]resence in the passenger seat is not enough." (*Zyduck*, *supra*, 270 Cal.App.2d at p. 335.) On the other hand, if the defendant is the driver of a stolen vehicle, "presumably there would be no question he had possession of the car." (*People v. Land* (1994) 30 Cal.App.4th 220, 223, fn. 2 (*Land*).) "However, operation of the vehicle is not the sine qua non of possession of a stolen vehicle. As noted, physical possession of the stolen property is not required. [Citation.] It is sufficient if the defendant acquires a measure of dominion or control over the stolen property. [Citation.]" (*Id.* at pp. 223-224, fn. 2.)

16

In this case, viewing the evidence in the light most favorable to the prosecution, as we must (*Cesar V.*, *supra*, 192 Cal.App.4th at p. 995), we determine that there is substantial evidence to support the juvenile court's finding that the minor exercised dominion and control over the vehicle. The minor was in the driver's seat of the stolen vehicle. Although there was no direct evidence that the minor had actually driven the vehicle, undisputed evidence established that at least one of his electronic devices was plugged into the vehicle and that the vehicle was supplying electricity to the device for the minor's use. In this regard, the minor acknowledges on appeal that the evidence reflects that the music Officer Yee heard from the vehicle "was played by a portable stereo charged via the car's cigarette lighter," and that the "portable stereo and charger" belonged to the minor. Given the minor's occupation of the driver's seat and his use of the vehicle's electrical system to power his electronic device, we determine that substantial evidence supports the juvenile court's finding that the minor exercised dominion and control over the vehicle and that he therefore possessed the stolen vehicle. (See *Zyduck*, *supra*, 270 Cal.App.2d at p. 336; *Land*, *supra*, 30 Cal.App.4th at p. 224.)

The minor contends that there was no evidence that he had a key to the vehicle, that he drove the vehicle, or that he and the other occupants used the vehicle to commit crimes, and therefore there is not substantial evidence that he possessed the vehicle. He argues that "they appear to have only used the vehicle for shelter and to listen to music." The minor further argues that his use of his own portable device, rather than the vehicle's radio, to play music "demonstrates that he did not exercise control over the vehicle." Lastly, he contends that "the evidence fails to establish that [he] made any appreciable impact on the car by charging his portable music device," as Officer Yee found the vehicle's electricity on at 10:00 p.m. and 2:00 a.m. and the owner did not report any problems retrieving the vehicle thereafter.

We are not persuaded by the minor's contentions. First, the minor does not cite any authority establishing that possession may only be established by proof that he or the

17

other occupants had driven the vehicle. (See *Land*, *supra*, 30 Cal.App.4th at p. 223, fn. 2 ["operation of the vehicle is not the sine qua non of possession of a stolen vehicle"].) Second, the minor had actual possession of the vehicle, as he was seated in the driver's seat and using the vehicle's electrical system to operate his electrical device. For purposes of possession of the vehicle, the minor does not persuasively articulate the legal significance of plugging his own device into the vehicle's electrical system to play music rather than using a stereo already installed in the vehicle. He also provides no authority to support the contention that his use of the vehicle's battery or electrical system must result in an "appreciable impact on the car" in order to constitute possession of the vehicle.

Accordingly, we conclude that substantial evidence supports the juvenile court's finding that the minor possessed the vehicle.

## B. *Failure to Declare That Offense Is a Felony or Misdemeanor*

The minor contends that the juvenile court failed to determine whether the offense of receiving a stolen vehicle (Pen. Code, § 496d) was a felony or misdemeanor pursuant to section 702, that the failure violated his federal constitutional rights, and that therefore the matter should be remanded for a determination.

The Attorney General contends that the juvenile court "treat[ed] the offense as a felony understanding that it had the discretion to treat the offense as a misdemeanor." In support of this argument, the Attorney General refers to the amended petition, the minutes or orders reflecting the court's rulings at the jurisdictional and dispositional hearings, the probation officer's early disposition report, the court's determination of a lengthy maximum period of confinement of nine years for the minor, and the court's confidential notices to the sheriff's department and the superintendant of schools regarding the findings that the minor had committed certain offenses.

The offense of receiving a stolen vehicle is a "wobbler[]," i.e., a crime "chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor."

18

(*People v. Park* (2013) 56 Cal.4th 782, 789; see *id.* at p. 789, fn. 4; Pen. Code, §§ 17, subds. (a) & (b), 496d, subd. (a).) Section 702 provides that in a juvenile proceeding, "[i]f the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." This language is "unambiguous" and its "requirement is obligatory . . . ." (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204 (*Manzy W.*).) Section 702 "requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult. [Citations.]" (*Manzy W.*, *supra*, at p. 1204.)

The required declaration as to misdemeanor or felony may be made at the jurisdictional hearing or at the dispositional hearing. (Cal. Rules of Court, rules 5.780(e)(5), 5.790(a)(1), 5.795(a).)[2] "If any offense may be found to be either a felony or a misdemeanor, the court must consider which description applies and *expressly declare on the record that it has made such consideration*, and *must state its determination* as to whether the offense is a misdemeanor or a felony." (Rule 5.780(e)(5), italics added; see also rules 5.790(a)(1), 5.795(a).) The juvenile court's determination must also be noted in an order or in the minutes from the hearing. (Rules 5.780(e), 5.795(a).)

The significance of an express declaration under section 702 was explained by the California Supreme Court in *Manzy W.* Among other things, the California Supreme Court pointed out that a minor may not be held in physical confinement longer than an adult convicted of the same offense. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1205; § 731, subd. (c).) Requiring the juvenile court to declare whether an offense is a misdemeanor or felony "facilitat[es] the determination of the limits on any present or future commitment to physical confinement for a so-called 'wobbler' offense." (*Manzy W.*,

_____

[2] All further rule references are to the California Rules of Court.

*supra*, at p. 1206.) Further, "the requirement that the juvenile court declare whether a so-called 'wobbler' offense [is] a misdemeanor or felony also serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion under Welfare and Institutions Code section 702." (*Manzy W.*, *supra*, at p. 1207.)

In *Manzy W.*, the minor admitted a drug possession offense that was a "wobbler" as well as a "joyriding" allegation, and the juvenile court dismissed two other allegations. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1202.) At disposition, the juvenile court imposed a felony-level term of physical confinement in the Youth Authority[3] but did not expressly declare the offense a felony. (*Id.* at p. 1203.) The California Supreme Court held that the failure to make the mandatory express declaration pursuant to section 702 required remand of the matter. The court explained that "neither the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony. [Citation.]" (*Manzy W.*, *supra*, at p. 1208.)

However, remand is not necessarily required in every case when the juvenile court fails to make a formal declaration under section 702. The California Supreme Court explained: "[S]peaking generally, the record in a given case may show that the juvenile court, despite its failure to comply with the statute, was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler. In such case, when remand would be merely redundant, failure to comply with the statute would amount to harmless error." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)

The California Supreme Court ultimately concluded in *Manzy W.* that the matter should be remanded to the juvenile court for an express declaration pursuant to section 702. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1211.) The California Supreme Court

---

[3] The Youth Authority is now known as the Department of Corrections and Rehabilitation, Division of Juvenile Facilities. (§ 1710, subd. (a); Pen. Code, § 6001.)

found "[n]othing in the record establish[ing] that the juvenile court was aware of its discretion to sentence the offense as a misdemeanor rather than a felony," and "it would be mere speculation to conclude that the juvenile court was actually aware of its discretion in sentencing Manzy." (*Id.* at p. 1210.)

In this case, nothing in the record unambiguously indicates that the juvenile court was aware of and exercised its discretion to declare whether the minor's offense of receiving a stolen vehicle "would be a felony or misdemeanor in the case of an adult." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1204.) Significantly, the juvenile court did not make an express declaration regarding whether the offense was a felony or misdemeanor during the jurisdictional hearing or the dispositional hearing.

A preprinted and unsigned form entitled "Delinquency Court Proceeding Findings and Orders," from the jurisdictional hearing on May 4, 2015, indicates that the "sustained violation(s)" were "Ct. 1 – PC496d – Felony, Ct. 2 – PC 242 - 243.2 – Misd." However, the form also includes the following statement: "The Court finds the following count(s) to be felony allegations," but the line after the statement has been left blank.

Similarly, the juvenile court's dispositional order (on a Judicial Council form) contains a check-mark next to the statement, "The court previously sustained the following counts. Any charges which may be considered a misdemeanor or a felony for which the court has not previously specified the level of offense are now determined to be as follows[.]" Underneath that statement, there are boxes labeled "Misdemeanor" and "Felony." None of the boxes are marked, however. Handwritten next to the boxes is the following: "Ct. 1 – PC496d – Felony [¶] Ct. 2 – PC242 - 243.2 – Misd."

Thus, to the extent the preprinted forms from the jurisdictional and dispositional hearings contemplated a determination by the juvenile court of whether the offense was a felony or misdemeanor, some or all of those portions of the forms were left blank by the court. Moreover, to the extent handwritten markings on the forms suggest that a determination was made that the offense of receiving a stolen vehicle was a felony rather

21

than misdemeanor, these portions of the forms *also* list the minor's misdemeanor offense of battery on school property, which is *not* a wobbler. (Pen. Code, § 243.2, subd. (a)(1).)

We are similarly not persuaded by the Attorney General's reliance on other documents in the record as purportedly reflecting the juvenile court's awareness and exercise of discretion to declare whether the minor's offense of receiving a stolen vehicle was a felony or misdemeanor. Several of the documents relied on by the Attorney General were prepared by the district attorney, the probation officer, or the court clerk, and thus those documents are not sufficient to show that the *court* made the decision and finding required by section 702. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1207.) The Attorney General also refers to the court's determination of a lengthy maximum period of confinement for the minor. However, the California Supreme Court has repeatedly emphasized that the "setting of a felony-length maximum term period of confinement, by itself, does not eliminate the need for remand when the statute has been violated." (*Id.* at p. 1209; see also *id.* at p. 1208.)

Therefore, in accord with *Manzy W.*'s requirement of an "explicit declaration by the juvenile court whether [the] offense would be a felony or misdemeanor in the case of an adult" (*Manzy W., supra,* 14 Cal.4th at p. 1204), we will remand the matter to the juvenile court so that it may declare whether the minor's offense of receiving a stolen vehicle is a felony or misdemeanor.

## IV. DISPOSITION

The disposition order of May 18, 2015, is reversed. On remand, the juvenile court shall exercise its discretion to declare whether the offense of receiving a stolen vehicle (Pen. Code, § 496d) is a felony or misdemeanor.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.

*People v. L.G.*
**H042392**